## Commonwealth Life Insurance Company v. Leete.

(Decided April 27, 1928.)

### Appeal from Floyd Circuit Court.

1. Insurance.—Where notes given for payment of balance due on premiums showed on their face that they were given and accepted in part payment of premiums, and it was never contemplated that obligation thus incurred could be released, or that it was to be discharged except by payment which was to be made in any event either by insured himself or by deducting amount of notes from earned values of policies, held, that taking of notes constituted payment of premiums.

2. Insurance.—Where insurer accepted notes as payment for balance due on year's premium, it was without power to forfeit or lapse policies for nonpayment of notes, notwithstanding provision to that effect embraced in note.

3. Insurance.—Where policies provided that after payment of certain number of premiums, if policyholder then ceased paying and failed to elect as to rights under policy, policies were to be extended for their full value and carried as term insurance for period fixed in tables, held, that term insurance should be based on value of such extended insurance from time paid insurance expired.

4. Insurance.—Where insured had three policies, one of which provided that, in event premiums were not paid, paid-up insurance would be given for value of premiums already paid in, and other two policies provided for term insurance in such event, and insured, being indebted to insurer, failed to pay premiums and subsequently died, held, that in apportioning indebtedness to policies it should be deducted from value of policy providing for paid-up insurance in order to keep other policies extending insurance in force.

5. Insurance.—Equity requires that policy provisions should be liberally construed in favor of insured.

BURNETT, BATSON & CARY, EDWARD L. ALLEN and A. J. MAY for appellant.

C. P. STEPHENS and R. P. FRIEND for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

In separate actions Mrs. Maggie Fitzpatrick Leete, as beneficiary, sought recovery on three insurance policies of $1,000 each issued by the Commonwealth Life Insurance Company on the life of her husband, Dr. R. H. Leete, who died on the 14th of February, 1926. One of the policies, No. 4569, was dated December 31, 1908, while the other two, Nos. 5705, 5706, were dated December 29, 1909, the premiums on each falling due annually on the days of the month named. No payments were made on premiums during or after the month of December, 1915.

The petition on the first policy asked a recovery for the amount of paid-up insurance to which the insured was entitled, under the nonforfeiture provisions in the tables therein set out, at the time it was alleged he ceased paying premiums thereon. The option agreement in that policy provided for automatic paid-up insurance in the event the policy was forfeited for nonpayment of premiums, unless insured made a written election of options. Dr. Leete had made no election, and in its answer the company confessed liability for the amount claimed, but distinctly asserted that its action in so doing was not to prejudice its defense in the other actions though the record in that case was made a part of the others, and no appeal is taken therefrom.

The suits on policies Nos. 5705 and 5706 are based on the theory that Dr. Leete had paid six annual premiums, to wit, those of December 29, 1909, 1910, 1911, 1912, 1913, and 1914; that the last payment carried the policy in force to December 29, 1915; that under the nonforfeiture provisions in the policy upon his failing to pay the seventh annual premium, he was entitled at his option to accept (1) their cash surrender values, (2) paid-up insurance payable at death for the amount of the insurance stated in the policy tables, or (3) to extend the insurance for a fixed period for the full amount of the policies, and in the event he did not so elect that the policies were automatically extended under the third option; that Dr. Leete did not make any election; and that the two policies named were thus automatically extended. The table of values mentioned extended the insurance at the end of the sixth year for a period of ten years and

seven months, and the policies by their terms lapsed December 9, 1915, and were thereby extended ten years and seven months, or to July 29, 1926, more than five months beyond the period of Dr. Leete's death. It is further alleged that, by mistake, Dr. Leete's age was overstated in his application and in the policies, and that he is entitled to such additional insurance as the increased premiums would have purchased at his true age.

The defense is that the annual premium of December 29, 1914, was not paid in full; that at that date the premiums on the three policies were merged; that the accrued dividends were deducted therefrom, and three notes of $25.42 each executed for the balance; that two of these notes matured June 29, 1915, and the third September 29, 1915; that the first two were paid by Dr. Leete, but that he defaulted in the payment of the one due September 29, and that the policies were then forfeited subject to the nonforfeiture provisions; that the premiums for that year not being paid in full, the extended insurance must be based on the value of the policies at the end of the fifth year which entitled the insured to nine years and one month extended insurance from December 29, 1914, or to January 29, 1924; that if construing the fractional payments made in 1915 as increasing this insurance it still fell short of the time of the doctor's death; the final contention being that, by the terms of the policy and the insurance note executed by Dr. Leete, the amount due on the latter should have been deducted from the optional policy values at the time of the forfeiture, and that when this was done the extended insurance did not reach the date of the doctor's death. As to these defenses, it is claimed by the plaintiff that the last-named note had in fact been paid or its payment waived by the company, and that the provision in the policy for decrease in the value of paid-up or extended insurance to the extent of the indebtedness due by the insured was void as against public policy.

Both cases were tried and heard together. A jury was waived and all questions of law and fact submitted to the court, who, without a separation, rendered judgment for the plaintiff for the full amount of her claim to be credited by $25.42, with interest from December 29, 1914, the amount of the last premium note. The defendant appeals.

The following stipulations appear in the policy:

*Nonforfeiture Provisions.*   "If this policy should lapse by nonpayment of any premium after three full years premiums have been paid in cash, the company upon legal surrender of the policy within sixty days from such nonpayment will grant the following options: (1) The cash surrender value shown in table A.  (2) Paid-up nonparticipating insurance payable at the same time as this policy for the sum shown in table B.  (3) If neither of the foregoing provisions should have been applied for as above, this policy shall continue automatically as term insurance without participation in surplus for the full amount insured thereby and for the number of years and months as shown in table B.  If any indebtedness be due the company, the values will be decreased in the proportion such indebtedness bears to the cash value."

Table A.

| At End of Year | Loan Value | Cash Value |
|:---:|:---:|:---:|
| 3 | 69 | 44 |
| 4 | 100 | 69 |
| 5 | 125 | 100 |
| 6 | 153 | 125 |

Table B.

| Paid-Up Insurance | Extended Ins. | | At End of Year |
| | Years | Mos. | |
|:---:|:---:|:---:|:---:|
| 106 | 5 | 0 | 3 |
| 159 | 7 | 1 | 4 |
| 212 | 9 | 1 | 5 |
| 265 | 10 | 7 | 6 |

*Payment of Premium.*  "If any premium or note given therefor be not paid when due, this policy shall become null and void subject to the nonforfeiture provisions in the tables herein.  Any unpaid

  portion of the current year's premium, together
with all indebtedness, shall be deducted from any
claim hereunder.''

  *Misstatement of Age.* ''Any error in stating
the age of insured will not vitiate this policy, but will
be adjusted by the payment of such an amount as the
premiums actually paid would purchase at the cor-
rect age of the table of rates in use by the company
at the date of issue of this policy.''

  The evidence is quite meager, though it appears that
the premium of December, 1914, was in its inception
handled as claimed by appellant. The three notes then
executed were in its possession and introduced in evi-
dence, all being similar except as to the maturing dates
and subsequent notations. The two maturing June 29
were paid, and each shows a notation of interest of 75
cents. The third reads:

"Dec. 29, 1914.

$25.42                    (This note must be dated ex-
  1.52  interest.        act day on which premium is
———                       due.)
$26.94

  ''On or before nine months after date, for value
received, I promise to pay to the order of the Com-
monwealth Life Insurance Company, twenty-five
$42/100$ dollars, without discount or defalcation, at
———, with interest from date, being part of the
premium on policy No. 4569, 5705, 5706 in said com-
pany due December 29, 1914. Should this note with
interest not be paid when due, the above-numbered
policy shall become null and void as of that date,
subject to the nonforfeiture provisions in said policy,
but the amount of this note with interest will be de-
ducted from any settlement made with the insured.
                              ''Ralph H. Leete.
            '' (Signature of Person Insured.)

''Prestonsburg, Ky.
''Due.       No. 783.
''Rend. 12/29/15.
''Policy Canceled—Note Void.''

  It further appears that the notes maturing June
29th were not paid at maturity; that the company did
not attempt to forfeit the policy therefor; and on October

6, 1915, its secretary-treasurer wrote Dr. Leete as follows:

"Dr. R. H. Leete, Prestonsburg, Ky. Dear Sir: Your favor of the 29th ult. inclosing check for $12.50 in settlement of the balance due on your notes which matured on June 29th is received, and I herewith inclose you the two notes canceled, and I am much obliged to you for your attention to this matter.

"You have another note for $25.42, with interest, which was due on September 29th, and I am herewith inclosing you a new note for the same amount drawn at twelve months from December 29, 1914, which will make it fall due on December 29, 1915, and if you will sign this note and return it to me in the inclosed envelope I will at once send you your old note canceled.

"Awaiting your reply and with kindest regards, I am,

"Very truly yours,
"Darwin W. Johnson, Secy. & Treas."

It does not appear that this letter was ever answered, though a witness for plaintiff who called at the office of the company for information thinks he saw a note for like amount, bearing Dr. Leete's signature, in the company's files when they were produced to him for inspection after the doctor's death. It will further be observed that the rubber stamp notations on the note, "Policy Canceled—Note Void," are not dated; that the interest is calculated upon the note for a full year; and that there is a lead pencil notation thereon reading, "Rend. 12/29/15," which indicates a renewal or extension to that date. It further appears that the company's records in this respect have been loosely kept; that when the plaintiff asked for blanks upon which to make proof of the doctor's death, the company informed her that the doctor had elected to take paid-up insurance on the policies and then claimed that the policies had been forfeited in December, 1915, which it later asserted was a mistake, and that its card indexes show a forfeiture of the policy on September 25, 1915, several days before the premium note was due, and eleven days prior to the secretary's letter quoted above. From all of these facts it is argued that the company had waived the forfeiture provisions of the policies and elected to keep them in force until the

29th of December, 1915. We are inclined to the opinion that this evidence is sufficient to sustain such conclusions if that matter was an issue. However, we do not think this material, as the doctrine of waiver has no application to the state of facts presented.

The premium notes show on their face that they were given and accepted in part payment of the 1915 premiums. It was never contemplated, that the obligation then incurred could be released, or that it was to be discharged except by payment which was to be made in any event either by the insured himself or by deducting the amount of the notes from the earned values of the policies, which was then many times over the amounts of the notes; authority to do this being incorporated in the policies and note itself as above quoted. Unquestionably this was intended to constitute and did constitute payment of the entire 1915 premiums. As much so as if the insured had borrowed the money outright from the company on his policies' cash surrender values and had paid the premiums therewith. Such being the case, after the execution of the notes and their acceptance by the company, it was without power to forfeit or lapse the policies for nonpayment of the notes during that period, notwithstanding the provision to that effect embraced in the note; and, as it appears that in the absence of election the policies were to be extended for their full value and carried as term insurance for the period fixed in the tables, it follows that this should be based on the value of such extended insurance from the end of the sixth year, or ten years and seven months from December 29, 1915.

2. It is strenuously argued, however, that the insurance notes were each given in part payment of premiums on all three policies, and that this should be allocated and the proportionate part alloted to each should be deducted from the value thereof as of date December 29, 1915; that the proportion of the premiums thus paid on each of these policies was $8.01; that at the end of the sixth year each policy had a cash surrender value of $125, which entitled the insured to extended insurance for a period of ten years and seven months, or one hundred and twenty-seven months; or, in other words, that $1 in cash purchased $1,000 insurance for a trifle in excess of one month; that upon deducting $8.01 from the cash surrender value of $125 only $116.99 remained, which, upon the same basis, would purchase extended in-

surance for not exceeding one hundred and eighteen months, and upon this basis the extended insurance expired in November, 1925, three months before the death of Dr. Leete. This argument is plausible and would be sound if the parties had agreed that the amount due on the note should be thus distributed among the various policies. No doubt, Dr. Leete could have directed it to be so done and have bound his beneficiary thereby. In the absence of such direction by Dr. Leete, the company might *then* have elected to charge the insurance note to the proceeds of either of the policies or to have divided it among the three by so notifying the insured. But it will be observed that no action in this regard was taken by either of the parties until after suit was filed, when the company elected to divide the indebtedness due on the note as above indicated and thus defeat recovery on the last two policies. We have not been cited to any case in which this question has arisen, but by analogy to the application of payment where several debts are owing by a debtor to the same creditor we feel the matter should be determined by the court on equitable principles.

Here the entire contracts were prepared by the company which fixed its own standard of values for the lapsed policies, and equity requires that the policy provisions should be liberally construed in favor of the insured. Extended insurance was most favorable to the insured, and this should not be shortened by an *enforced* division between the various policies. No. 4569 provided for automatic paid-up insurance payable at death, and the full amount of the premium note can be deducted from its value as of date December 29, 1915. When this is done, the other two policies were, by their own terms, continued in force beyond the doctor's death. We think this fair and equitable. Such an apportionment makes only a slight change in the judgment of the court and does not require a reversal of the judgment. Upon a return of the case the judgment may be modified to conform to these views.

Wherefore, perceiving no error, the judgment is affirmed.