## STERLING MUT. LIFE INS. CO. v. STATE NAT. BANK OF HOUSTON et al.

### No. 9827.

Court of Civil Appeals of Texas. Galveston.

May 30, 1933.

Rehearing Denied July 26, 1933.

Boyles, Scott & Fahey and J. T. Scott, Jr., all of Houston (J. T. Scott, Jr., of Houston, of counsel), for appellant.

Atkinson, Atkinson & Gaugler, of Houston, for appellees.

LANE, Justice.

On December 27, 1929, the Sterling Mutual Life Insurance Company, hereinafter for convenience referred to as the insurance company, issued its life insurance policy No. 687 on the life of Augustus Allen McGrath, hereinafter referred to as Allen McGrath or McGrath. The policy is in the principal sum of $5,000. By its terms, and on October 15, 1930, a change of beneficiaries was indorsed on it. By such change Colleen McGrath, minor daughter of McGrath, was made beneficiary therein in the sum of $3,500, and the remainder of $1,500 of the policy was made payable to the estate of Allen Augustus McGrath. Such were the names of the beneficiaries up to the date of the death of the insured on the 15th day of February, 1931. The first premium of $184.95 due on the policy was paid; the second annual premium on the policy became due on the 20th day of December, 1930. Attached to the policy and made a part thereof were five coupons, the first of which is as follows:

"Sterling Mutual Life Insurance Company will accept as $100.00 this guaranteed coupon in part payment on the second or any subsequent annual premium on policy No. 687 or pro rata on semi-annual or quarterly premiums, or will credit the amount hereof to the insured, payable as stated in said

policy with three and one-half per cent compounded interest."

A table of guaranteed values was attached to and made a part of the policy, the pertinent part of which is as follows:

"Table of guaranteed values to apply in case insured elects to leave coupons to accumulate at three and one-half per cent compound interest or uses them to purchase paid up additions or extended insurance. At any time that coupons may be taken in cash by the insured, used to pay premiums, used to purchase stock, or detached for any reason, then this table shall be null and void and the table shown on page one of this policy shall apply. Unless the insured shall elect otherwise in writing, the coupons shown shall be held at three and one-half per cent compound interest and shall be withdrawable at any time in cash or payable to the beneficiary under this policy in case of the death of the insured."

Under the heading "Privileges and Options Governing Coupons And Stock Purchase Option" forming a part of the policy, wherein certain privileges and options are enumerated, the following appears:

"The Holder of this Policy may exercise any of the following options with regard to the Coupons on this page when said Coupons are due:

"1. Apply said Coupons at their face value to the payment of premiums on this Policy.

"2. Leave said Coupons with the Company to draw three and one-half per cent (3-1/2%) compound interest and withdrawable at any time in cash, or payable for their face value plus accumulated interest thereon in case of death.

"3. Leave said Coupons with the Company to draw three and one-half per cent (3-1/2%) compound interest and at any time after first of said Coupons become due, and while this Policy is in force, the Company will, within ninety (90) days after receipt of written request by the insured, loan upon the sole security of the Coupons then due up to the face amount of said Coupons then due less any then existing indebtedness thereon. The Company will require a satisfactory assignment of said Coupons and will deduct from the loan any existing indebtedness thereon or secured by said Coupons and interest at the rate of six per cent (6%) per annum to the end of the current policy year. All or any part of the sum loaned may be repaid at any time. Failure to pay any loan or interest thereon when due shall mature to the Company Coupons assigned to secure said loan.

"4. Leave said Coupons with the Company at three and one-half per cent (3-1/2%) compound interest and apply them to decrease the number of premiums payable hereon.

"5. If all five of said Coupons shall be left with the Company at three and one-half per cent (3-1/2%) interest and there is no existing indebtedness thereon, upon the payment of the sixth annual premium or within sixty days thereafter, the Company will issue in exchange for the surrender of the said five Coupons the number of shares of stock in the Company at a par value of Ten Dollars ($10.00) per share that the face value of said Coupons together with the interest accumulated thereon will purchase at a purchase price of Twenty Dollars ($20.00) per share, the remainder of said Coupons and accrued interest, if any, to be paid to the policyholder in cash or left with the Company in accordance with any of the foregoing options. Or, if said five Coupons are left intact with the Company and there is no existing indebtedness thereon, the Company will issue to the insured, upon payment of the sixth annual premium or within sixty days thereafter, any number of shares of stock in the Company at a par value of Ten Dollars ($10.00) per share and a purchase price of Twenty Dollars ($20.00) per share that the insured may elect to buy, up to the maximum number of shares of stock allowed under this agreement, the remainder of the Coupons and the accrued interest to be paid to the insured in cash or used in accordance with any of the foregoing provisions. Or, if the insured shall allow said five Coupons to remain intact with the Company, then he shall have the privilege of purchasing the number of shares of stock to which he is entitled under this agreement and paying cash for same at the rate of Twenty Dollars ($20.00) per share and leave the said Coupons with the Company under any of the options or conditions enumerated in this agreement.

"This Rider is issued and accepted on Policy No. ——— subject to the provisions and privileges set out on the face hereof.

"In witness whereof, the Sterling Mutual Life Insurance Company has caused this Rider to be signed by its President and Secretary this 27th day of December, Nineteen Hundred and Twenty-nine."

The policy, among other things, provides as follows: "A grace of thirty-one days (without interest), during which time this Policy will remain in force, will be allowed for the payment of any annual, semi-annual, or quarterly renewal premium; provided, that if the insured shall die within such period of grace the unpaid premium for the current policy year will be deducted in any settlement under the Policy."

It further provides that upon default in payment of any premium, or any installment thereof, the policy shall be null and void and all premiums forfeited to the company, except as in the policy provided.

The exception referred to is the provision for reinstatement.

Allen McGrath, the insured, at no time made any demand for the withdrawal of any money by reason of any of the coupons attached to the policy, nor did he tender any one of them to the insurance company in part payment of the second premium due on the policy, nor did he give any written instructions to the insurance company as to how to apply the proceeds to arise from the coupons, or make any election as to how such proceeds should be applied.

The second annual premium due on the policy December 20, 1930, was not paid, nor any part thereof, by the insured, and it remained unpaid up to the time the insured died on February 15, 1931, unless it was, as a matter of law, paid from the proceeds of the first coupon attached to the policy.

Thirty days before the second premium became due the usual and customary premium notice used by the insurance company was given to the insured, advising him that such premium would be due December 20, 1930, and thereafter, and after such premium had become due, insured was again advised by letter by the company that the second premium was unpaid, as follows: "Your premium has not been paid, and your policy as described below is in danger. A. W. Shannon, Secretary."

After the lapse of thirty-one days from the date the second premium became due, the time of grace allowed for the payment of past due premiums, the insurance company mailed to the insured a letter advising him that he had lapsed his policy. After having given such advice, the company made an entry on its books and records to the effect that policy No. 687 on the life of Augustus Allen McGrath had been forfeited by the insured by reason of his failure to pay the second annual premium, or any semiannual or quarterly installment thereon, on the due date thereof, or within said thirty-one-day period of grace thereafter.

Insured McGrath was not on the 20th day of December, 1930, nor at any time thereafter, indebted to the company in any sum whatever.

After the death of McGrath, the State National Bank of Houston, Tex., was the duly appointed and qualified administrator of his estate, and Gladys E. McGrath, a feme sole, was the duly appointed and qualified guardian of the person and estate of the minor, Colleen McGrath, Colleen being the same person named as a beneficiary in the policy hereinbefore described.

The insurance company is a mutual life insurance company, incorporated under the laws of Texas.

After the death of the insured, on February 15, 1931, the State National Bank of Houston, as administrator of the estate of the insured, joined by Gladys E. McGrath, guardian of the person and estate of the minor, Colleen McGrath, duly and properly notified the insurance company of the death of the insured and made demand upon it for forms on which to prepare and present to the company proof of the death of the insured and the interest of said parties in the policy, but the insurance company refused to furnish said interested parties, or either of them, such forms, and denied that it was indebted in any sum by reason of the policy of insurance, and refused to pay either of said parties anything by reason of such policy.

After the company had declined payment of the policy, the State National Bank of Houston, Tex. as such administrator, joined by Gladys E. McGrath as such guardian, employed attorneys to present their claim on the policy and to file and prosecute this suit for them and in their names against the insurance company to recover upon said policy $1,500 for the estate of the insured, and $3,500 for the minor, Colleen McGrath, the two sums being the principal sum due upon the policy; to recover against the company the 12 per cent. penalty provided by law, upon the sum due on the policy, for interest, and for $1,000 as attorneys' fees.

The plaintiffs alleged the execution and delivery of the policy and other matters that, if proven, would entitle them to a recovery. They specially alleged that by the coupons attached to the policy the insurance company obligated and bound itself to pay the insured on the 20th day of December, 1930, in cash, the sum of $100, and that the policy provides that the insured had the option to apply such coupon at its face value to the payment of premiums due on the policy, or to withdraw in cash the sum of $100; that the insured made no such withdrawal but left the same in the hands of the company, which said sum belonging to insured was in the hands of the company on the date the second premium became due, which was more than enough to pay in full the semiannual premium on the policy; that the assured had the right under the terms of the policy to pay said second annual premium either in one installment, two semiannual installments of $96.17, or four quarterly installments of $48.91 each; that such coupon was in the nature of a guaranteed dividend, which the assured might have applied at its face value to payment of the second premium on the policy. They further alleged as follows:

"That the defendant herein is a mutual life insurance company, incorporated under the laws of Texas, and that by virtue of said policy prepared and issued by the defendant, the said Augustus Allen McGrath was one of the members of said corporation and was entitled to have the officers and agents thereof to give just and reasonable protection to

his rights and that not having withdrawn or cashed the coupon attached to said policy under the provisions thereof and the defendant herein having in its hands by virtue thereof more than enough to pay the premium on said policy for the first quarter thereof and more than enough to pay the premium on said policy for a period of six months, beginning December 20th, 1930, it was the duty and obligation of the defendant, its officers and agents, to apply said One Hundred ($100.00) Dollars due by defendant to assured on December 20th, 1930, to the premium due on December 20th, 1930, same being a semi-annual premium on said policy, which would have, if done, carried said policy paid in full force and effect for a period of six months and thus avoid a forfeiture of said policy for non-payment of such premiums, from December 20th, 1930, and that by reason of all of the facts and circumstances hereinbefore set forth and the terms and provisions of said policy, riders hereinbefore mentioned, said policy was in full force and effect on February 15, 1931, the date of the death of said Augustus Allen McGrath."

Defendant company answered by general demurrer, general denial, and specially alleged that the assured failed to pay the second premium due on the policy on December 20, 1930, or any part thereof, prior to his death; that by reason of such failure the policy was forfeited; that since no part of the second premium was paid when due, or within the thirty-one days of grace, nothing was due upon the coupon in question, therefore it had in its hands no funds belonging to the assured at the time said second premium became due, nor up to the time of assured's death. Defendant pleaded the options allowed the assured relative to the coupons attached to the policy, and further alleged that the sum of money stated in the coupon, or any part thereof, had not accrued to the assured on the 20th day of December 1930, the date the second premium became due, by reason of the express terms of the policy, and would not so accrue until after the second premium was paid in cash.

Defendant, pleading further, says that if any sum of money became due on the coupon on December 20, 1930, or at any time, then, according to the terms of the policy, the assured had the right to require defendant to pay over to him the cash so due, and since assured made no demand for such sum to be applied to the payment of the second premium, or any part thereof; that on December 20, 1930, the assured was not indebted to defendant in any sum whatsoever; that he was not legally bound to pay said second premium or any part thereof; that no part of said premium was owing by assured to defendant, and therefore defendant had no legal right to enforce the payment of same, or any part thereof, against assured; that neither the assured, nor any one for him, at any time elected in writing or otherwise to have said premium, or any part thereof, paid with proceeds of said coupon.

The cause was tried before the court without a jury and upon the facts stated in our foregoing statement, which are agreed to be facts by both parties, and upon the pleadings of the parties, the court rendered judgment against defendant in favor of the State National Bank of Houston, administrator, for $1,474.50, together with $176.94 as penalty prayed for, and interest thereon at the rate of 6 per cent. per annum; and in favor of Gladys E. McGrath, as guardian of the estate of Colleen McGrath, against defendant for $3,440, together with $412.86 as penalty prayed for, together with 6 per cent. interest thereon from date of judgment, and that the two plaintiffs recover of defendant $1,000 as attorneys' fees, divided three-tenths to the administrator of the estate of the insured, and seven-tenths thereof to Gladys E. McGrath, guardian of the estate of Colleen McGrath, from which judgment the insurance company has appealed.

The trial court filed his findings of fact and conclusions of law, and in addition to the facts stated in our preliminary statement, he found as facts the following:

"The policy sued on in this case provided that the annual premiums could be paid at the option of the assured, either semi-annually at the rate of Ninety Six and 17/100 Dollars, or quarterly at the rate of Forty Eight and 91/100 Dollars, without any action or consent either on the part of the defendant or such assured, and that on December 20th, 1930, by the terms of such policy, the defendant herein had in its hands belonging to said Augustus Allen McGrath the sum of One Hundred Dollars, which was more than sufficient to pay in full the semi-annual premium provided by said policy, which, by the terms of said policy, would have carried said policy for a period of six months from December 20th, 1930, and same would have been in full force and effect on February 15th, 1931, the date of McGrath's death, and that it was the duty of defendant in order to avoid a forfeiture of said policy for non-payment of the premiums thereon, to have applied the One Hundred Dollars in its hands belonging to McGrath to the payment of the semi-annual premium thereon. The court also finds that, by the terms of said policy, said guaranteed dividend or credit amounted to the sum of One Hundred Dollars on December 20th, 1930, and that same was then available to McGrath without conditions or restrictions, subject to withdrawal by him in cash on December 20th, 1930, or to be placed to the credit of said policy on December 20th, 1930."

The conclusions of law filed support the judgment rendered, assuming that the facts found are supported by the evidence. Where-

fore, we need not set out such conclusions here.

There are but two principal issues presented on this appeal:

(1) Was the policy sued on in effect at the time of the death of the insured, February 15, 1931? (2) Did the facts shown entitle the plaintiffs to the attorneys' fees awarded?

■ Appellant's contention for reversal of the judgment is that the agreed facts show that the second premium due on the policy was not paid when due, nor within the thirty-one days of grace allowed for such payment, and therefore the insured had permitted the policy to lapse and become void on the 31st day of January, 1931, fifteen days prior to his death; that since the second premium was never paid, no sum accrued to the insured by reason of the first coupon attached to the policy, and since by the terms of the policy contract the amount stated in the coupon was to become due only in the event the second premium, or a part thereof, was paid in cash when due, or within the thirty-one days of grace allowed for its payment, the coupon was valueless and could not be used in payment of any part of the premium. Wherefore, the court erred in holding that appellant had in its possession sufficient funds of the insured which, if applied to a payment of a quarterly or semiannual installment of the second premium due on the policy, would have extended its life beyond the time of the death of the insured, and in holding that it was the duty of appellant, in order to avoid a forfeiture of the policy for nonpayment of premiums, to apply the proceeds arising from the coupon to payment of either a quarterly or semiannual installment on the premium due on the policy, especially so since the insured at no time tendered the coupon attached to the policy in part payment of the second premium, or gave any written instructions as to what application to make of the coupon, and at no time made any election as to how such coupon should be applied.

We overrule appellant's contention. By the express terms of the first coupon the insurance company agreed to accept it as $100 in part payment on the second or any subsequent annual premium on the policy No. 687, or on any pro-rata on semiannual or quarterly premiums. Such agreement must be understood as an agreement on the part of the insurer that the coupon was a valuable asset of the insured which he could use as $100 as a payment on the second premium when it became due on the 20th day of December, 1930, or within the thirty-one days of grace allowed by the terms of the policy for the payment of premiums after their respective due dates. It is clearly apparent that such coupon was available to the insured to make payment on the second premium on the day it became due or at any time within the thirty-one days of grace.

We think it clear that both the insurer and the insured understood that the first coupon was to become available to the insured to make payment on the second premium on the very day such premium became due, and that for such purpose it had a money value of $100, and since such value was in the possession of the insurer it was its duty to avoid a forfeiture of the policy, regardless of the provision in the same that unless insured should elect otherwise in writing such funds should be held by the company at interest.

We think, when considered as a whole, the language of the policy in question is such that it is fairly susceptible of an inferpretation which should prevent a forfeiture upon the grounds contended for by appellant.

■ As already stated, we think appellant had in its hands funds belonging to the insured which could have been used by it in making a payment on the second premium so as to prevent a forfeiture of the policy, in the absence of any instructions from the insured to the contrary. We think the law is well settled that if an insurance company has in its hands money belonging to the insured at the time a premium is due, in case such premium is not paid it becomes the duty of the insurance company to apply such funds for the benefit of the policy holder so that a forfeiture or lapse will be avoided. North American Accident Ins. Co. v. Bowen (Tex. Civ. App.) 102 S. W. 163, 167 (writ of error denied); North v. Insurance Co. (Mo. App.) 231 S. W. 665, 666; Mutual Life Ins. Co. v. Henley, 125 Ark. 372, 188 S. W. 829; Mutual Life Ins. Co. v. Breland, 117 Miss. 479, 78 So. 362, 363, L. R. A. 1918D, 1009; 19 Am. & Eng. Ency. of Law (2d Ed.) page 50; Brown v. Palatine Ins. Co., 89 Tex. 590, 35 S. W. 1060.

The court in the case first cited said: "The company will be held in law and in equity to have done what it should have done; that is, made an application of enough of it to pay off and satisfy all of the defendant in error's [assured's] premium notes then remaining unpaid to save a forfeiture of the policy."

In North v. Ins. Co., supra, it is said:

"Appellant [the company] contends that [it] * * * could not, without specific orders from the insured, apply part of the moneys in its hands, due the insured, to pay the premiums due. No reason is given to support this contention. It is not necessary that specific orders from the insured be received before applying said moneys to the satisfaction of the premiums. Such application [of moneys] being for the benefit of the insured, his consent thereto will be presumed. * * *

"The plainest principles of equity and a just regard for the rights of the insured required the defendant to apply the moneys in its hands due the insured to the satisfaction of the premiums when due, so as to keep the policy alive."

The policy in the Breland Case, above cited, was very similar to the one in the present case. In that case the third premium on the policy became due in November of 1911 and was not paid, but the insurance company had on hand $56 earned dividends, together with $35.45 of surplus. The annual premium was $65.88. The assured died without paying such third premium. The policy provided that dividends thereon should, on the 12th day of November of each year, be either: (1) Paid in cash; (2) applied toward payment of any premium; (3) applied to the purchase of paid-up additions to the policy; or (4) left to accumulate to the credit of the policy and payable at maturity thereof, or withdrawable on any anniversary thereof.

The policy contained the following language: "Unless the insured or the owner of the policy shall elect otherwise within three months after the mailing by the company of a written notice requiring the election of one of the four above options, the dividend shall be applied to the purchase of paid-up additions, as per option (3)."

In that case it was held in the light of the provisions of the contract it was plain that the insurance company had in its possession at the time of the death of the insured a sum in excess of the past due third annual premium. The court then asked the question: "Was it the duty of the company to apply these funds toward the payment of that premium?"

Answering its own question, the court said: "We say unhesitatingly, that under the facts of this case and under the contract here under observation, equity demands the application of the funds in a way to avoid a forfeiture of the policy. If the dividend and the earned surplus, then due and payable, are applied toward the liquidation of the third premium, the policy is kept alive. If the company fails to apply the funds, the policy is forfeited. In reference to the dividends, counsel for appellant contend that the contract provides that these dividends shall go toward the purchase of additions or dividend insurance; that this additional insurance or 'paid-up additions' is insurance fully paid for, requires no further premiums to be paid on it, and operates as additional insurance which cannot be forfeited even when there is no liability on the main policy. It is well settled that the law abhors a forfeiture, and it is reasonable to assume that the option accorded the insurance company to apply the dividends to the purchase of paid-up additions contemplated a situation where the policy was being kept in force, and not a situation in which the insured is in default for nonpayment of a premium. To apply the funds in accordance with the option given appellant would mean a little additional insurance and a forfeiture of the main contract, and to apply the funds towards the liquidation of the past-due annual premium

would mean the keeping alive of the main contract. The very object of the contract is to provide insurance for the full amount of $2,000, and here the company had it in its power to apply the insured's money in a way to keep alive the main contract and in doing so to conserve ordinarily the best interests of both parties."

In 19 Am. & Eng. Ency. of Law (2d Ed.) page 50, it is said: "The rule has been broadly laid down that a life insurance company cannot insist upon a forfeiture for the nonpayment of a premium where it has in its possession dividends belonging to the insured sufficient to pay the premium at maturity."

In view of the authorities cited, from several of which we have quoted, we have reached the conclusion from the facts shown in this case that the first coupon attached to the policy became available for the payment of either a quarterly or semiannual installment of the second premium; that it was in the hands of appellant, and it was the duty of appellant to apply a sufficient part of the proceeds thereof to the payment either of a quarterly or semiannual installment of the annual premium to prevent a forfeiture of the policy, and that, since the law demands the application of such funds to such payment, the policy was in force and effect at the time of the death of insured.

■ By its twenty-eighth assignment appellant insists that the court erred in finding and holding that $1,000 was a reasonable fee for the services performed by plaintiffs' attorneys, Atkinson, Atkinson & Gaugler, for the prosecution and collection of the sum due upon the policy, because there was no evidence to sustain such finding and holding, in that the only evidence relative to the reasonableness of the services of said attorneys covered and included their services for filing and prosecuting this suit and in having a temporary administrator appointed for the estate of the deceased insured, and in securing the appointment of a guardian of the person and estate of the minor, Colleen McGrath, a beneficiary named in the policy, and such evidence fails to show what would be a reasonable attorneys' fee for filing and prosecuting this suit only, without including the other services mentioned. It insists that the performance of such other services was not a necessary part of the prosecution of this suit for the collection of the sum due upon the policy, which sum it denied it owed and which it refused to pay; that a fee for such other services is not reasonable under the provisions of article 4736, Revised Civil Statutes of 1925, which provides for the recovery of a reasonable attorney's fee in suits brought to collect upon insurance policies where liability is denied by the company issuing the policy; that since it is not shown what portion of the fee awarded was for prosecuting the suit under the provisions of said article 4736, it

was reversible error to award the attorneys' fee as awarded.

We overrule such contention. It is apparent that before a suit could be legally brought upon the policy in behalf of the estate of the insured, Allen McGrath, deceased, it was necessary to have some one to qualify as temporary administrator of said estate, clothed with authority to bring the suit. Wherefore, the services of the attorneys in having such temporary administrator appointed was a part of the necessary services rendered in the suit.

The only witness who testified as to what a reasonable fee for filing and prosecuting this suit would be, said: "A thousand or twelve hundred dollars, I think, for the case, the temporary administration, and the conduct of the case in the district court."

It will be noted that the witness in estimating the reasonable fee took into consideration the appointment of a temporary administrator for the estate of the deceased insured, and the filing and prosecuting of this suit in the district court only, and that he did not include in his estimate anything for services in having a guardian appointed for the minor, Colleen McGrath.

For the reasons above expressed the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

PLEASANTS, Chief·Justice (dissenting).

Appellant, in an able motion for rehearing and oral argument submitted on the motion, vigorously assails our judgment affirming the judgment of the trial court, on two grounds. The first ground of assault is based upon the theory that the $100 coupon which matured at the expiration of the first year for which the premium on the policy was paid did not constitute funds in appellant's hands belonging to the insured which it was in any circumstances required to wholly appropriate to prevent the forfeiture of the policy. This theory is based upon the following provisions of the coupon: "Sterling Mutual Life Insurance Company will accept this guaranteed coupon as One Hundred Dollars ($100.00) in part payment on the second or any subsequent annual premium on policy No. 687 or pro rata on semiannual or quarterly premiums or will credit the amount hereof to the insured hereunder, payable as stated in said policy with three and one-half percent (3½%) compound interest. A. M. Miller, President."

Appellant earnestly insists that this provision of the contract can only be construed as giving the insured the right to use such pro rata part of the $100 in payment of yearly, semiannual or quarterly premiums on the policy, as the $100 bears to the yearly premium; and that the insured having been duly notified of the accrual of the premium for the second year, and having made no offer to pay in cash any part of the premium necessary to keep the policy in force for three, six, or twelve months, the policy became forfeited for nonpayment of premium at the expiration of thirty-one days from the due date of the second yearly premium.

The question is not wholly free from doubt. But when the insurance contract is construed as a whole and its primary purpose of protecting the family of the insured from loss by his death is given due consideration, I agree with my associates that the motion should not be granted on this ground. In my opinion the coupon was a fund in the hands of the appellant belonging to the insured which equity would have required it to apply in full to prevent a forfeiture of the policy, if the insured had not by other provisions of the policy expressly prohibited such application of the $100 evidenced by the coupon, unless authorized by him.

As shown in our original opinion the policy in this case gave the insured several options in the application of the $100 coupon which became due and owing to him at the expiration of the first insurance year. The second of these options is as follows: "Leave said coupons with the company to draw 3½% compound interest and withdrawable at any time in cash, or payable at their face value plus accumulated interest thereon in case of death." The policy further provides that "unless the insured shall elect otherwise in writing, the coupon shown shall be held at 3½% compound interest and shall be withdrawable at any time in cash, or payable to the beneficiary under this policy in case of the death of the insured." There is no ambiguity in this language, its meaning is plain, and it seems to me that no sound reason can be given for not holding it valid and binding upon both parties to the contract.

Counsel for neither of the parties have found any case in this state in which this question has been presented upon a state of facts exactly similar to the facts of this case. It seems to the writer that it is unnecessary for appellant to present any such authorities, since there is no principle of equity or rule of law that required or permitted appellant upon the undisputed facts of this case to apply the fund in its hands to the payment of the premium upon the policy. The question here presented has been discussed and decided in the case of Gardner v. Life Ins. Co., 201 N. C. 716, 161 S. E. 308, in which the facts were in substance exactly the same as in this case.

I respectfully dissent from the holding of

the majority of this court refusing the motion for rehearing. I think the motion should be granted, and the judgment of the trial court so reformed as to limit appellees' recovery to the sum of $100 with compound interest at the rate of 3½ per cent. per annum from the date the coupon matured.