# Commonwealth Life Insurance Company v. Gault's Administrators.

### (Decided June 22, 1934.)

### (Rehearing Denied Dec. 21, 1934.)

626

BATSON, CARY & WELCH and WOOTTON & WOOTTON for appellant.

W. W. REEVES for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Paul W. and J. A. Gault were twin brothers. They jointly owned land situated in Perry county, Ky. On September 24, 1919, they made application to the Commonwealth Life Insurance Company for a loan of $8,000 on their real estate, and also made application for life policies of $8,000 each upon their respective lives. The title to the real estate was examined and approved in December, and the $8,000 loan was secured by a mort-

gage on their real estate, and, as an additional security for the loan, the life insurance policies were assigned to the company. The premiums on the policy of P. W. Gault during the continuance of the policy were not paid as they matured, and as a result his policy lapsed, more than once, at the dates the premiums were due. He was permitted to reinstate the policy and pay the premium after it was reinstated. On the anniversary of his policy, on September 24, 1930, there fell due the premium of $293.44, to meet which he paid $43.44 in cash and executed installment premium notes; the first falling due on December 1, 1930, and one on the first day of each succeeding five months. The premium note falling due December 1, 1930, was paid. The insurance company claims that on the 18th day of December, at Louisville, Ky., it addressed, stamped, and mailed to Paul W. Gault, at his home address, a notice informing him his premium note would be due and payable on January 1, 1931, and unless it "shall be paid to the company or to the collecting agent or bank on or before the day it falls due, the policy and all payments thereon would become forfeited and void, subject to the non-forfeiture provision, if any, in said policy. No grace is allowed on this premium extension note and as your policy will lapse if it is not paid when due, I will ask that you give the matter your prompt attention."

Gault was then in bad health and had been for some time. He had decided to leave Hazard, Ky., go South, and endeavor to regain his health. On the 22d day of December, or four days after the company claims it mailed at Louisville, Ky., the above notice, Gault made arrangements with Lanty Corley, his brother-in-law, to take charge of his business, telling Corley that he had a premium note due in January on his insurance. However, he did not inform Corley of the exact due date. Corley had a policy with the same company, and knew of its custom to send notice of due date of the premium, and assumed the company would mail notice to Gault and it would be received by him. He had no knowledge of the fact the company had mailed the notice on the 18th day of December. Gault did not impart to him the fact he had received the notice, if indeed he had received it, between the 18th and the 22d. Corley made arrangements with postal authorities at Hazard to deliver all of Gault's mail to him, and awaited the receipt of a notice from the insurance com-

pany in regard to Gault's premium falling due on January 1st. The first notice dated January 7, 1931, was received by him on January 9th. It was addressed to Gault, and advised him the policy had lapsed January 1st, because of the nonpayment of the premium note due January 1, 1931.

Corley immediately mailed the company a check for $42.32, the amount of Gault's premium and interest. It did not return the check to Corley, but on January 14th wrote a letter, addressed and mailed it to Gault, again informing him the policy had lapsed by non-payment of the premium extension note due January 1, 1931, and that it was unwilling to accept the check, and advised him to consider his application for reinstatement of the policy; a blank copy of same was inclosed with directions how to comply with it. At the time Corley mailed the check for $42.32 he wrote no letter, but merely inclosed a check. On receiving the letter of January 14th addressed to Gault, Corley wrote, addressed, and mailed a letter to the company informing it that Gault had "left before Christmas and had not returned," leaving him in charge of his affairs, informing him at the time his premium note would be due in January, and the reason he (Corley) had not paid for him, the extension premium note, was, he was waiting to receive a notice from it as to what was due, and "no notice came except the notice saying the policy had lapsed." On January 19th the company addressed and mailed a letter to Gault reiterating its statement relative to the cancellation of the policy, the premium note, and its refusal to receive the check, and again advised him to make application for reinstatement of the policy. It should be noted that Corley's letter of Jan. 17th informed the company Gault had left and had not returned; but it imparted no information as to where he had gone nor as to the condition of his health.

Anticipating the maturity of the February note, Corley sent the company a check for $43 to cover it, informing the company Gault was out of town and in Texas for his health. The company responded to this communication still insisting the policy had been canceled. Gault, at that time, was sick in Texas and knew nothing of all of this. He died in March, and after his death this suit was brought to recover on the policy.

The $8,000 loan to the Gaults, which was secured by a mortgage on real estate and an assignment of the two

life policies, had been reduced by payments to about $4,100. In addition to this loan to the Gaults, P. W. Gault had obtained from a company a loan of $1,040, commonly known as a policy loan.

The defense of the company is the policy had been canceled. On the other hand, Gault's administrator contends that the company had in its hands money due Gault which it should have applied to the payment of the note due in January, and had no right to cancel the policy for the nonpayment of this note; that it had in its hands available funds of the insured, and it was its duty to protect the right of Gault "by applying the available funds in its possession to his advantage." He also insists the company's "previous course of dealing with the insured and its acceptance of part payment of a premium, after delinquency, constituted a waiver of the conditions respecting time of accepting premiums"; that the provision of the policy, "If there were any loan on the policy the indebtedness should be paid out of the cash surrender value and the remainder paid in cash to the insured, is void because discriminating against the policy-holder in debt to the insurer." He insists "the acceptance of the series of notes was a payment of the insurance premium, and binding on it, although the policy calls for cash payment," and the correct rule in the case is, where a "series of notes are given for a premium, a precipitating clause therein declaring all due on default of one, is void."

The strenuous duty devolves upon us to review the developed facts and the provisions of the policy and determine the correctness of the respective contentions of the parties.

It is an accepted rule:

"If an insurer is indebted to an insured, and has, or should have, in its hands, sufficient funds belonging to and due him, to pay an assessment or a premium when due, it cannot forfeit its policy or certificate for non-payment; rather, it should appropriate such funds to prevent a forfeiture, no matter from what source such funds were derived."

Rogers v. Union Benevolent Soc., 111 Ky. 598, 64 S. W. 444, 23 Ky. Law Rep. 928, 55 L. R. A. 605; Citizens' Life Ins. Co. v. Boyle, 139 Ky. 1, 129 S. W. 303; National Council J. O. A. M. v. Thomas, 163 Ky. 364, 173 S. W. 813; Supreme Council, C. K. A. v. Wathen, 179

Ky. 64, 200 S. W. 320; Commonwealth Life Ins. Co. v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057, 1059. Also, if the insurer agreed to accept payment on a default premium at a later date, or if its antecedent course of dealing with the insured was to accept default premiums after delinquency, the insurer thereby waives the conditions of the policy respecting the time of paying premiums. Mutual Life Ins. Co. of New York v. Wilson, 34 S. W. 708, 17 Ky. Law Rep. 1316; Central Life Ins. Co. v. Roberts, 165 Ky. 305, 176 S. W. 1139; Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S. W. (2d) 931; Continental Ins. Co. of New York v. Hargrove, 131 Ky. 837, 116 S. W. 256.

It is true that where there is a ''provision in a note given for a premium, that if only one of a series of notes should not be paid at maturity, the whole amount of the premium should be considered earned and all the notes should become due and the policy should become null and void and so remain until same should be fully paid and the policy reinstated by the company, is a mere penalty which cannot be enforced''; but this rule prevails only where such a provision is not in the policy. The taking of a note or series of notes for a premium constitutes payment of the premium only where it is never contemplated that such obligation can be released except by payment. Inter-Southern Life Ins. Co. v. Duff, 184 Ky. 227, 211 S. W. 738; Commonwealth Life Ins. Co. v. Leete, supra.

The policy and the notes given for the payment of the balance due on the annual premium involved in Commonwealth Life Ins. Co. v. Leete, were identical with those in the present case except this language was in each of the notes, ''but the amount of this note with interest will be deducted from any settlement made with the insured.'' The above-quoted words of the notes in that case were eliminated by the Commonwealth Life Insurance Company after our opinion in the Leete Case, and they are not now in the notes involved in the present one. Therefore, our opinion therein, and the reasons therefor, are not applicable and controlling in the present one. With the quoted clause in the note in the Leete Case deleted, Gault's rights are not within the rule stated therein; i. e., the ''acceptance of notes for the balance of year's premium constituted a payment therefor where it was never contemplated the obliga-

tion thus incurred could be released except by payment." In each of Gault's notes it is provided:

"Should this note with interest at 6% per annum not be paid when due, the above numbered policy shall become null and void as of that date subject to the non-forfeiture provision of this policy."

The policy contains this clause:

"If any premium or note given therefor be not paid when due, this policy is null and void, subject to the non-forfeiture provisions in the table thereon."

It was competent for the parties to agree on, and insert in the policy, this clause. It is in no sense a discrimination against an insured who has procured a loan on his policy. In giving it effect, the insurer may not exercise its right thereunder to the detriment or injury of a borrowing policyholder. The clause not being unreasonable, illegal, or contrary to public policy, it is enforceable; the duty being upon the insurer to accord, when enforcing it, the same privileges and rights to all policyholders, without regard to the fact they are or are not borrowers under the terms of the policy. Fidelity Mutual Life Insurance Co. v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. Law Rep. 1148. The courts will not aid or permit the enforcement of a penalty for the nonpayment of a debt.

In Northwestern Mutual Life Ins. Co. v. Barker's Ex'x, 241 Ky. 490, 44 S. W. (2d) 292, 294, it is stated:

"In this field of business an insurance company has no greater privileges or rights than banks and other money lending agencies. Emig's Adm'r v. Mutual Benefit Life Ins. Co., 127 Ky. 588, 106 S. W. 230, 32 Ky. Law Rep. 484, 23 L. R. A. (N. S.) 828. This is particularly true when the contingencies of a nonpaid-up policy are absent. New York Life Ins. Co. v. Curry, 115 Ky. 100, 72 S. W. 736, 24 Ky. Law Rep. 1930, 61 L. R. A. 268, 103 Am. St. Rep. 297."

The insurance company under the quoted clause of the policy reserved the right, if the note for the January premium was not paid when due, to elect to declare all of the premium notes due and the policy forfeited because of the nonpayment of the January note. The execution of the installment notes for the annual premium and the extension of time of their payment be-

yond the day on which the annual premium was agreed to be paid was but an agreement not to enforce the consequences of a forfeiture in the event the installment notes were paid as they matured. The acceptance of the installment notes was not unconditional, but subject to the provisions of the policy as a favor to the insured.

This doctrine was announced in Manhattan Life Ins. Co. v. Myers, 109 Ky. 372, 59 S. W. 30, 22 Ky. Law Rep. 875; Manhattan Life Ins. Co. v. Pentecost, 105 Ky. 242, 642, 49 S. W. 425, 20 Ky. Law Rep. 1442. The same doctrine is recognized in Moreland v. Union Central Life Ins. Co., 104 Ky. 129, 46 S. W. 516, 20 Ky. Law Rep. 432; Union Central Life Ins. Co. v. Duvall, 46 S. W. 518, 20 Ky. Law Rep. 441, and Fidelity Mutual Life Ins. Co. v. Price, supra. The rule enunciated in these cases is consonant with those reiterated in Jefferson Standard Life Ins. Co. v. Hurt, 254 Ky. 603, 72 S. W. (2d) 20, wherein we stated:

"In actions on insurance policies we have consistently construed them as contracts definitely fixing the liability of the insurer and measuring the right of the insured to a recovery. The liability of the insurer and the right of a recovery by the insured must be determined by the language of the policy, the same as a contract about any other subject-matter. Mutual Benefit Life Ins. Co. v. O'Brien (Ky.) 116 S. W. 750. The parties may insert in it any provision they desire, or agree upon, limiting the liability of the company or the rights of the insured, provided it is not unreasonable, illegal, or contrary to public policy. Glens Falls Ins. Co. v. Elliott, 218 Ky. 327, 291 S. W. 705; Standard Auto Ins. Ass'n v. Neal, 199 Ky. 699, 251 S. W. 966, 35 A. L. R. 1468. In every case, in determining the liability of the company under its policy and the right of the insured thereunder, the court must give effect to all its provisions, words, and phrases, liberally construed in favor of the insured (Ætna Life Ins. Co. v. Bowling Green Gas Light Co., 150 Ky. 732, 150 S. W. 994, 43 L. R. A. [N. S.] 1128), and, when interpreting and construing it, the court may not add to or strike therefrom any language, so as in effect to constitute a new condition (Fidelity & Cas. Co. v. Bynum, 221 Ky. 450, 298 S. W. 1080). This rule is based upon the theory the court cannot make a contract of insur-

ance for the parties, under the guise of interpretation or construction, so as to insert or exclude words or phrases not contained in it; but must define the liability of the insurer and determine the right of the insured according to its terms and conditions as made by the parties themselves. Phœnix Ins. Co. v. Stevenson, 78 Ky. 150; Haselden v. Home Ins. Co. of N. Y., 247 Ky. 530, 57 S. W. (2d) 459. It is the duty of the courts to take the words of the policy as they are found in it and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed.''

These accepted principles are in accord with the inexorable duty of the insurance company to protect the rights of the insured by applying the available funds under its control or in its possession belonging to the insured to his advantage (Commonwealth Life Ins. Co. v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057), instead of pursuing a course of conduct which will enable it to profit at his expense. Adhering to this generally accepted rule, it has many times been held by this court that an earned and distributable dividend must be appropriated by the insurer to the payment of a due premium and thus avert a lapse or forfeiture of the policy because of the non-payment of the premium. Northwestern Mut. Life Ins. Co. v. Barker's Ex'x, 241 Ky. 490, 44 S. W. (2d) 292.

Until the policy was canceled for nonpayment of the premium note due January 1st, the cash surrender value was not for the purpose of paying premiums, by any construction of any clause, phrase, or provision of the policy, subject to the direction or control of the company; nor was it in sense a fund under the control or in the possession of the insurance company subject even to the power or right of Gault to direct its application to the payment of a premium note. It was subject to the expressed provision of the policy relating thereto, and the company was without right to apply it for any purpose or in any manner, except as specifically and distinctly directed by the policy. It was not the duty of the company to encroach upon the cash surrender value for the purpose of paying either or all of Gault's premium notes. At the time the policy was canceled for nonpayment of the January premium note, the cash surrender value of the policy was $1,176; the policy

loan was $1,040, which, when deducted from the $1,176, left a balance of $136. The unearned interest on the policy loan was $48.40, and the dividend which had accrued on the tenth anniversary of the policy became due by reason of the cancellation and had not been applied under the terms of the policy, and thereby became in form a dividend coupon. The $136, the $48.50, and the $24.50, added together, amounted to $208.90, which was due Gault on the cancellation of the policy. In order to arrive at the $208.90 it was first required to cancel the policy for the nonpayment of the January installment premium note, and the policy at that time having been canceled, Gault became entitled thereto as a sequence to the company's cancellation of it.

The dividends which had accrued under the policy aggregated $403.92 which when added to the $24.50, the dividend that accrued on the tenth anniversary of the policy, amounted to $428.42. Gault, under a provision of the policy, was entitled to elect the disposition of the annual dividend, which right he had failed to exercise. As to the dividends, the policy reads:

"* * * Such dividends will be declared and become payable only at the expiration of the first and second ten-year period from the date hereof, and after such time dividends will be declared and paid annually. Should the insured not elect the special provision or the additional special provision as contained in this policy, then each dividend may be * * * left with the company to accumulate at interest. * * * The dividends allowed to remain with the company at interest, then said unpaid dividends, with compound interest at the rate of 3% per annum for each full year after the dividend was due, will be added to the face of the policy in the event of the death of the insured, or paid in cash upon presentation to the company. Paid-up additions shall be nonforfeitable and will participate in the surplus as provided above. Such additions may be reconverted into cash at the end of the any anniversay upon request by insured, while this policy is in full force."

In Jefferson et al. v. New York Life Ins. Co., 151 Ky. 609, 152 S. W. 780, 783, we said:

"The term, 'dividend addition,' is perhaps more frequently misapplied than any other term used in

connection with insurance. It means something added to the policy in the shape or form of paid-up insurance. The term originated in this way: When a dividend was apportioned to a policy and not drawn by the policy holder in cash, or used by him in reducing his premium payments, the company would issue to the insured a paid-up policy, payable at his death, for such an amount as the dividend, applied as a single premium, would buy; and this little policy, fully paid-up, was appended to the original policy, and was called a 'dividend addition' to the policy. It, in no sense, represents unapportioned assets, or surplus, of the company, but has reference solely to paid-up insurance.''

Williams v. Union Central Life Ins. Co., 291 U. S. 170, 54 S. Ct. 348, 78 L. Ed. 711. In the Williams Case, the court distinguishes a dividend under a life policy from cash surrender value as the latter term is used in insurance parlance. It was there held that dividend additions are paid-up insurance in addition to the face of the policy, purchased with dividends. In Jefferson et al. v. New York Life Ins. Co., we held that the words ''dividend additions,'' in our statutes, have reference solely to paid-up insurance. See Mutual Ben. Life Ins. Co. v. O'Brien (Ky.) 116 S. W. 750. In the administrator's brief, discussing the Williams Case, he uses this language:

''Prior to his death, Williams had made an assignment to the insurance agent of all dividends due from the company and therefore there was nothing in the company's hands out of which his premium could have been paid.''

An analogous situation is presented in the pending case. The mortgage of the Gaults to the insurance company to secure the $8,000 loan contains this clause:

''As an additional security for the payment of said Eight Thousand ($8,000.00) Dollars, P. W. Gault hereby assigns, transfers and conveys unto the Commonwealth Life Insurance Company, all of the right, title, interest and benefits, existing, or which may hereafter become vested in him, or his estate, under Policy No. 27367, dated September 24th, 1919, issued by the Commonwealth Life Insurance Company on the life of P. W. Gault * * * and the conditions of this mortgage is that this assignment of

said policy shall remain in full force and effect until all the above mentioned ,debt and interest has been paid to the said Commonwealth Life Insurance Company.''

Gault had assigned the policy, and by this provision of the mortgage pledged it to secure the real estate loan. This pledge inevitably carried with it the dividend additions to secure the same loan, and therefore there was nothing in the company's possession out of which his premium could have been paid. To allow Gault the benefit of the dividend additions or dividend coupons for the purpose of paying the premium or any part thereof, as evidenced by the series of premium notes, would be contrary to the express provisions of the policy and a violation of this clause of the mortgage.

Gault having failed to elect to direct the disposition of the annual dividend and thereby allowed the same to become under the express provisions of the policy "paid up additions payable with the policy," his assignment of the policy to the company to secure the real estate loan carried with it, and pledged the paid-up additions or dividend coupons as collateral to secure the real estate loan. At the date of his failure to pay the installment premium note due January 1st, the insurance company, by virtue of the assignment of the policy, and the language of the mortgage, had an enforceable lien on the paid-up additions or dividend coupons, the same as it had on the policy itself. Forman v. Proctor, 9 B. Mon. 124; Parks v. Parks, 9 Ky. Law Rep. 346; Osborn v. Taylor, 9 Ky. Law Rep. 495. The insurance company having under its assignment and the provision of its mortgage a lien on the policy to secure the real estate loan, the paid-up additions or dividend coupons were not funds in the possession of the company to which Gault was entitled for the purpose of paying the premium note or notes. Williams v. Union Central Life Ins. Co., supra.

A careful examination of the evidence fails to disclose a custom of the insurance company to indulge Gault in the payment of the premium or notes therefor, after delinquency, such as to constitute either an estoppel or a waiver within the meaning of either of these terms. Indeed, it is conceded that on two occasions Gault failed to pay his premium when due and permitted the policy to lapse, and thereafter, in conformity with its provisions, on his application, the pol-

icy was reinstated. A life insurance company is under no obligation to give the insured notice of the amount and maturity of a premium, in the absence of an express or implied agreement, or a statute, requiring it, where the policy definitely fixes the amount of the premium and the time of payment. Gasser's Ex'x v. Michigan Mut. Life Ins. Co., 201 Ky. 659, 258 S. W. 102. As to notice to Gault of the maturity of his note for the installment premium maturing January 1st, the testimony in behalf of the insurance company is that a proper notice was prepared, addressed, stamped, and mailed to Gault at his correct address. It is not contradicted. To escape the effect of mailing the notice, Corley testified that after Gault turned over to him his affairs on December 22d, he endeavored to ascertain whether a notice of the company informing Gault of the maturity of the January premium note had been received by Gault, but he was unable to locate same, if it had been received and left by Gault before he departed for Texas.

The accepted rule is that where a letter or a postal card has been prepared, addressed, stamped, and placed in the United States mail, the presumption is it was received by the addressee in due course of the mail. Crab Orchard Banking Co. v. Saunders, 174 Ky. 68, 191 S. W. 652; Continental Ins. Co. v. Hargrove, 131 Ky. 837, 116 S. W. 256; Springfield F. & M. Ins. Co. v. Jenkins, 9 Ky. Law Rep. 932; Railway Officials' & Employes' Ass'n v. Beddow, 112 Ky. 184, 65 S. W. 362, 23 Ky. Law Rep. 1438; A. C. Whitmer Co. v. McClung, 247 Ky. 625, 57 S. W. (2d) 648. Neither the testimony of Corley nor that of any other witness is sufficient to overcome the presumption that the letter mailed on the 18th of December by the company to Gault was received by him.

The administrator insists that the rule applied in Sterling Mutual Life Ins. Co. v. State National Bank (Tex. Civ. App.) 62 S. W. (2d) 541 controls this case.

For the court to assume the power of compelling the company to accept the $24.50 dividend as a partial payment of the January premium note would be in effect to that extent the interpolating a clause in the contract of insurance not agreed upon and inserted therein by the parties. To require the company to accept a partial payment of the January premium by crediting thereon the $24.50 dividend would be equivalent to

writing in the policy a provision not contained in it. It is only our duty to enforce the contract as made by the parties, not to make a contract for them under the guise of construing it. There being no clause, phrase, or provision in the contract of insurance entitling Gault to require the company to credit the January premium by the $24.50 dividend either before or after the cancellation of the policy is, and ought to be, a sufficient reason for not crediting the same.

It is argued that Gault had no knowledge that he was entitled to the dividends which were in the hands of the company which he could elect to have applied to the payment of his premiums. No evidence supports this statement. In fact, there is no showing as to Gault's knowledge on this subject. He knew that he had signed and executed a mortgage to secure the $8,000, in which he had "assigned all right, title, interest and benefits existing or which may hereafter become vested in him or his estate under the policy"; and the reasonable presumption is that not only did he desire the protection of the policy for the benefit of the mortgage debt, but wanted it augmented by the dividend additions, and with adequate knowledge of its provisions made no election in respect to the dividends as he had a right to do under the policy.

It is our view the insurance company had no funds in its hands due, or belonging to, Gault with which to pay any or all of the installment notes, and the proven facts are insufficient to sustain the plea of estoppel or waiver of the payment of the premium note maturing January 1, 1932, and the company was clearly within the terms of its policy when it canceled it and tendered in satisfaction of its liability to Gault the $208.90.

Wherefore, the judgment is reversed, with direction to dismiss the petition, and for proceedings consistent with this opinion.

Clay, Justice (dissenting).

P. W. Gault and his brother, J. A. Gault, borrowed $8,000 from appellant, and secured it by a mortgage on property located in Hazard. As further security for the loan, each agreed and was required to take out a life policy of $8,000 in appellant company, and assign it to appellant. Pursuant to the requirement and agreement, P. W. Gault obtained the policy sued on, and assigned, transferred, and conveyed to appellant "all of the

right, title, interest and benefits existing, or which may hereafter become vested in him or his estate'' under the policy. The policy was issued on ''the annual dividend plan.'' The dividends are of two kinds: Dividends guaranteed to be not less than the amount shown on the coupons attached to the policy, and such additional dividends as might be apportioned from the surplus at the end of each ten years, and annually thereafter. The annual premium was $231.04, payable September 24th of each year. All premiums due on the policy were paid for eleven years. To meet the premium due September 24, 1930, $43.44 was paid in cash, and six notes executed for the balance, payable on the first of each month beginning December 1, 1930. The note payable December 1, 1930, was paid when due. The note due January 1, 1931, was not paid, and the policy was forfeited. Prior to September 24, 1930, and at the time of the default, the company had in its hands coupon dividends aggregating $403.92. By the terms of the policy the dividends could be used in reduction of the premiums, or, if the premiums were paid in full, they could be used to purchase paid-up additions, payable with the policy, or left with the company to accumulate at interest. The company occupied a dual position of lender and insurer. When the policy was written it was immediately assigned to the company. Whether the insured ever read the policy, or was advised of his right to have the dividends applied on the premiums, does not appear. Certain it is that he made no election, and that being true the dividends were available for the purpose of reducing the premiums, and it was the duty of the company to apply a portion of the dividends to the payment of the note due January. 1, 1931, and thus prevent a forfeiture, Rogers v. Union Benevolent Society No. 2, 111 Ky. 598, 64 S. W. 444, 23 Ky. Law Rep. 928, 55 L. R. A. 605; Citizens' Life Ins. Co. v. Boyle, 139 Ky. 1, 129 S. W. 303, unless, as held in the majority opinion, the assignment of the policy deprived the insured of that right. Where a policy is assigned as security for a debt, it operates as a mere pledge, and the assignee is entitled to receive out of the proceeds of the policy only the amount of his debt and advancements, with interest. Baldwin v. Haydon, 70 S. W. 300, 24 Ky. Law Rep. 900; Irons v. U. S. Life Ins. Co., 128 Ky. 640, 108 S. W. 904, 33 Ky. Law Rep. 46, 129 Am. St. Rep. 318. In no sense were the dividends, which could be used in reducing the premiums, a part of the proceeds of the

policy, or a benefit under the policy within the meaning of those terms. The insured agreed to take out the policy and keep it in force. It was to the interest of the parties that it be kept in force. The only reason that the policy was taken out and assigned was that it was valuable as a security. It was never intended by the parties that the assignment of the policy should have the effect of weakening or destroying the security by depriving the insured of the right to apply the dividends so as to keep the policy in force. In their final analysis the dividends were nothing more than mere credits on the premiums, and the company was no more entitled by virtue of the assignment of the policy to a lien on these credits than to a lien on the cash payments made on the premiums by the insured.

For these reasons I am unable to concur in the majority opinion.