## Aetna Life Insurance Company v. Bowling Green Gas Light Company.

(Decided November 26, 1912.)

### Appeal from Warren Circuit Court.

1. Insurance, Indemnity—Employers Liability Insurance—Construction of Policy—Liability for Interest, Costs and Damages.—Where the contract of insurance stipulated that the insurer would pay a fixed sum of $5,000.00 as indemnity to the assured, and in addition thereto would pay the "expense of litigation," if litigation was engaged in by its direction, the words "expense of litigation" include the costs of the suit incurred by the assured, the damages awarded the claimant on an appeal by the assured, and the interest that accrued on the judgment against the assured.

2. Insurance, Indemnity—Employers Liability Insurance—Construction of Policy.—As the insurance company has the right to compel the assured, against his will, to engage in litigation or else forfeit the right to any part of the indemnity he had contracted for, when it elects to burden the assured with the cost and expense of a law suit, the provisions of the policy should be liberally construed for his benefit.

SIMS & RODES for appellant.

T. W. & R. C. P. THOMAS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant is a liability or indemnity insurance company, and in March, 1907, issued to the appellee gas light company a policy insuring it against loss that it might sustain on account of being required to pay damages to persons injured by its plant. Among other conditions the policy contained the following:

"A. The company's liability for a loss on account of an accident resulting in bodily injuries to or in the death of one person is limited to five thousand dollars ($5,000); subject to the same limit for each person, the company's total liability for loss on account of any one accident resulting in bodily injuries to or in the death of more than one person, is limited to ten thousand dollars ($10,000).

"The company will, however, as provided in conditions 'D' and 'E,' hereof, pay the expense of litigation in addition to the sum herein limited, provided that if the company shall elect to pay the assured the sum as

herein limited, it shall not be liable for further expense of litigation after such payment shall have been made.

"D.    If thereafter any suit is brought against the assured to enforce a claim for damages on account of accident covered by this policy, the assured shall immediately forward to the company's home office every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on the behalf of the assured, unless the company shall elect to settle the same or to pay the assured the indemnity as provided for in condition 'A' hereof.

"E.    The assured, whenever requested by the company, shall aid in effecting settlements, secure information and evidence, the attendance of witnesses, and in prosecuting appeals, but the assured shall not voluntarily assume any liability or interfere in any negotiation for settlement, or in legal proceeding, or incur any expense, or settle any claim, except at his own cost, without the written consent of the company previously given except that the assured may provide, at the company's expense, such immediate surgical relief as is imperative at the time of accident."

While this policy was in full force a man named Dean came in contact with one of appellee's wires and was so injured that in a few days thereafter he died. The appellee gave immediate notice to the insurance company of the accident, and in all other respects fully complied with and observed all the conditions in the policy imposing duties upon it. Soon after the death of Dean his executrix brought suit, to recover damages for his death and this suit was defended by counsel representing the appellant. Upon a trial in the circuit court judgment was rendered against the appellee in favor of the executrix for $6,750, on June 28, 1910, and the appellee, at the request of appellant, prayed an appeal to the Court of Appeals, which was granted. Thereafter on July 20, 1910, the judgment appealed from was superseded by the execution of an appeal bond, surety upon which was furnished by appellant, and when the case came up for rehearing in the Court of Appeals, the judgment appealed from was affirmed, with 10 per cent damages, as authorized by law. After the judgment had been affirmed by the Court of Appeals it was, in due time, satisfied by the appellee by the payment of $7,998.50, which included the amount of the judgment

rendered in the circuit court, with interest thereon from the date of that judgment until its payment, amounting to $428.62; the damages awarded in the Court of Appeals, amounting to $680, and the court costs amounting to $139.88.

The appellant company, being only liable in the principal sum of $5,000, paid this amount to appellee, after the case had been affirmed in the Court of Appeals, but refused to pay the damages awarded by the Court of Appeals, or any part of the interest that accrued on the judgment to the extent of $5,000, from the time of its rendition until it was satisfied, or the court costs of the action, and this suit was brought by appellee to recover the costs, and damages, as well as the interest on $5,000 from the date of the judgment in the circuit court until the $5,000 was paid by appellant. In the lower court a judgment was given for these amounts, and this appeal is prosecuted to obtain a reversal of that judgment.

On behalf of appellant the argument is made that by the terms of the policy its liability was fixed at $5,000, and that having paid this amount, it is not liable for the sums appellee paid in damages, interest and costs or any part thereof. It is very true that the policy stipulates in clause "A" that the liability of the company in cases like this is limited to $5,000, but in the clause thus limiting its liability is a provision that it will, "as provided in conditions 'D' and 'E' hereof, pay the expenses of litigation in addition to the sum herein limited." In condition "D" it is stipulated that the company would "at its own cost" defend any suit that might be brought, unless it elected to settle the same or paid the assured the indemnity provided for, and condition "E" gives the insurance company complete control of the settlement of all claims, for which it might be liable, that are presented against the assured.

In other words, the substance of the contract on the point under consideration is that the insurance company will pay $5,000, and in addition thereto all cost and expenses of litigation, unless it elects to pay the $5,000 and settle without litigation any claim asserted against the assured. If it does so elect, then, in the words of the contract, "it shall not be liable for further expense of litigation after such payment shall have been made." This being our construction of the policy, it follows that if the words "expense of litigation" fairly

include interest, damages and cost, the insurance com-
pany must pay the amounts adjudged against it.

Counsel for appellant contends that the words "ex-
pense of litigation" do not include any of the items we
have mentioned, and should be confined to the payment
of attorney fees, obtaining witnesses, securing bonds
and other like expense incident to this class of suits;
but to give the policy this construction would be to ig-
nore, for the benefit of the insurance company, and to
the prejudice of the assured, stipulations in the contract
that are equally as binding upon it as the one fixing its
liability at $5,000. The liability of the company is to
be measured by all of the undertakings of the policy and
not alone by one. The policy should be construed as a
whole, and effect given to all of its provisions and when
so construed the liability of the insurance company is
not limited to $5,000 nor are the words "expense of liti-
gation" to be confined to the items of expense indicated
by counsel.

That $5,000 was not intended by the policy to be the
full extent of the liability, is made plain by the con-
dition obligating it to pay, in addition to this, "the ex-
pense of litigation," and when its agreement to pay the
expense of litigation is considered in connection with
the unlimited control of the litigation conferred upon it
by clauses "D" and "E," its liability for the expense
of litigation should be made broad enough to fairly
cover all of the expense incurred in the litigation that
it compelled the assured to engage in. The insurance
company had the undoubted right to compel the assured,
against its will, to engage in litigation, or else forfeit
the right to any part of the indemnity it had contracted
for, and as it could, by electing to insist on litigation,
burden the assured, against its consent, with the cost
and expense of a law suit, the provisions of the policy
should be liberally construed for its benefit.

We think the words "expense of litigation" embrace
all the expenses that the assured was put to by the liti-
gation, including costs, damages and interest on $5,000,
and this construction is supported by the cases of Trav-
elers Insurance Co. v. Henderson Cotton Mills, 120 Ky.,
218; Southern Railway News Co. v. Fidelity & Casualty
Co., 26 Ky. L. R., 1217; Fidelity & Casualty Co. v.
Southern Railway News Co., 31 Ky. L. R., 55; Cudahy
Packing Co. v. New Amsterdam Casualty Co., 132 Fed.,
623, although a different conclusion was reached in the

construction of somewhat similar policies in Davison v. Maryland Casualty Co., 197 Mass., 167; National Providence Mills v. Frankfort Marine Ins. Co., 28 R. I., 126; Maryland Casualty Co. v. Omaha Electric Co., 157 Fed., 514.

We are unable to perceive upon what reasonable theory the words "expense of litigation" should be limited to one part of the expense more than another, or why they should be held to include cost incurred in litigation and not interest or damages incurred in it. The damages that the assured incurred in appealing the case and the interest on $5,000 that accrued pending the appeal, are as much a part of the expense of litigation as the court costs. No sound distinction can be made between these items of expense. Certain it is that the assured was compelled to pay, on account of this litigation, the court costs, the damages, and the interest on $5,000 from the date of the judgment in the lower court, no part of which it would have been required to pay except for the litigation.

An attempt, however, is made to distinguish between the items of damage and cost and the item of interest, and the argument is made that as the assured had the use of the $5,000 during the appeal, and as this use was worth the interest, therefore, this should not be accounted an expense, as the assured did not lose anything by paying the interest. But this argument overlooks the fact that the assured had to pay to the claimant the interest it now demands, and unless it recovers it from the insurance company it will be out this item of expense incurred by the litigation. If the insurance company had paid the $5,000 when the judgment was rendered in the lower court, at which time the claimant first became entitled to interest, that would have ended its liability under the policy. But this it refused to do, and now unless it pays the interest that accrued on this $5,000 after that time and pending the appeal, the assured will lose it. The fact that the assured had the use of the $5,000 pending the appeal has nothing to do with who shall pay this interest, but if it did the parties would be on an equal footing, because the insurance company also had the use of the $5,000 during the appeal. It is simply a question of which one should bear this item of expense, and we think the insurance company should.

It is further insisted that as the policy contract was for indemnity only against loss sustained by the assured, no liability attached to it under the policy until the assured had suffered some loss. From this premise it is argued that as the assured did not suffer any loss until it was required to pay the judgment, therefore, the liability of the insurance company did not begin or attach until that time, and hence it should not be required to pay any interest or other expense that accrued before that time, or any sum in excess of the $5,000 that it obligated itself to pay.

Upon the point, whether the liability of the insurance company only accrued when the insured was compelled to pay the loss, or attached when the liability was incurred, there is some conflict in the authorities, as may be seen by an examination of the cases of Anoka Lumber Co. v. Fidelity and Casualty Co., 63 Minn., 286, 30 L. R. A., 689; Finley v. United State Casualty Co., 113 Tenn., 592, 3 Am. & Eng. Anno. Cases, 962; American Employers' Liability Ins. Co. v. Fordyce, 62 Ark., 562, 54 Am. S. R., 305; Cayard v. Robertson, 123 Tenn., 382, 30 L. R. A., n. s., 1224; Stephens v. Penn. Casualty Co., 135 Mich., 189, 3 Am. & Eng. Anno. Cases, 478; Connolly v. Bolster, 187 Mass., 266, 72 N. E., 981; Carter v. Aetna Ins. Co., 76 Kansas, 275, 11 L. R. A., n. s., 1155.

But we do not find it necessary in this case to decide when the liability of the insurance company arose. It might be conceded that the policy was one of indemnity only against loss, and that as between it and the assured, its liability did not attach until the assured suffered some loss, or, in other words, was required to pay out money in discharge and satisfaction of the claim asserted against it. But the admission of this does not alter out conclusion, because, as we have endeavored to show, the liability of the insurance company was not limited by the policy to $5,000.

Upon the whole case we think the judgment appealed from was correct, and it is affirmed.