## Gaffney, et al. v. Switow.

(Decided June 19, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Trial—Instruction Held Misleading as Not Applicable to Evidence. —Instruction, in architect's action for breach of contract, that if the minds of the parties did not meet there was no contract, held misleading, as not being applicable to the evidence.

2. Contracts—Instruction Authorizing no Recovery for Architect's Services, Unless Jury Found Alleged Contract was Made, Held Proper.—Instruction authorizing no recovery for architects' services, unless jury found their alleged contract with owner was made, held proper.

3. Evidence—Testimony as to Witness' Qualifications and Experience as Architect Held Admissible to Show His Competency to Testify. —In action for breach of oral contract to employ plaintiffs as architects for erection of theater building, architects' testimony as to their qualifications and experience was admissible to show their competency to give their judgment as to the costs plaintiffs would have incurred in carrying out the contract and other like matters.

4. Damages—Rule Requiring Person Not Employed as Agreed to Minimize Loss Held Not Applicable to Contract to do Definite Work. —The rule that, where there is a contract for personal services for a year or a month, the person employed is required to minimize his loss from employer's breach, if he can, held not applicable to contract to do definite work, as in the case of a contractor, a carpenter, or an architect.

5. Damages—Architects Held Not Required to do Other Work to Minimizes Damages from Breach.—Architects, whose contract for work was breached by other party, held not required to do other work, in order to minimize loss to other party.

6. Damages—Measure of Damages for Architects, whose Contract for Work Other Party Breached, Stated.—Architects, whose contract

for work was breached by other party, were entitled to recover contract ·price, less reasonable cost they would have incurred in doing the work contracted for, regardless of whether the work they did was of large or small value.

EDWARD J. McDERMOTT and EUGENE J. COONEY for appellants.

BOOTH, McDOWELL & CONNER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Appellants are architects in Louisville. They brought this suit against Michael Switow, alleging in their petition that he requested them to make plans and sketches for a proposed theatre on Fourth street in Louisville on a lot which he desired to lease, and it was agreed between them that if he could not obtain the lease for the lot for which he was negotiating they would make no charge against him for the plans and sketches, but that if he should obtain a lease on the lot he would employ them to make full sketches, drawings and specifications for the theatre and to superintend the building of same, and that he would pay them the customary fee for said work; that they performed the work as requested and prepared and delivered to him the plans and sketches, also a second lot of plans and sketches which he received and used to show to the owner of the lot on which he was trying to get a long lease; that thereafter he secured the lease and erected a theatre on the lot, but fraudulently disregarding his contract with the plaintiffs broke the same and without plaintiffs' knowledge or consent deprived them of their just compensation, and employed other architects to build the theatre, which cost $100,000.00, and was built substantially and practically like the plans and sketches prepared by the plaintiffs; that the usual and customary fee paid to architects for such work was 6% of the cost of the building, or $6,000.00, and thereby they were deprived of the profits which otherwise would have accrued to them if he had performed his contract, to the plaintiff's damage in the sum of $3,500.00, for which they prayed judgment. The defendant filed answer controverting the allegations of the petition. Proof was heard; the jury returned a verdict for the defendant. The plaintiffs appeal.

The proof shows that the plaintiffs had been employed by the defendant in three or four cases before

the erection of the proposed theatre was contemplated, and that the parties were well acquainted' with each other. The proof for the plaintiffs, by Mr. Gaffney, as to the contract, put in narrative form, is as follows:

"Early in May, 1920, he was leaving our office and remarked that some of these days he was going to get a lot on Fourth street between Broadway and Chestnut and build a sure enough moving picture theatre for his sons. In a few days he came back to the office and said, 'Now, I have got my mind on three different lots on Fourth street between Broadway and Chestnut on which to build this theatre that I was talking to you about and I want you to make a sketch for me to show the owners, and then he immediately wanted to know what I would charge him for the sketches. I replied quickly that it would cost him nothing provided he did not make a lease, but should he make a lease he should pay us the customary architect's fee of 6%. Well, the proposition seemed to strike him favorably, but he immediately replied, 'Can't you do that for 5%?' I immediately told him that I had made no money on any of his work and that I would make him these drawings and specifications and superintend that work for nothing less than 6%. He agreed and I started to work on the sketches. In a few days he came along and got the sketches to show them to the three different owners, Mr. T. P. Taylor, Mr. John Klein and Mr. Oscar Fenley, to make a lease, to show them that he meant business in building a fine theatre and not a speculative venture to get a lease on their lot. We discussed the sketches with him. We also made at his request a second lot of plans and sketches. He took the sketches with him and obtained the lease from Mr. Fenley. This was in October, 1920. Nothing was said then as to our charges. That had been agreed to in May. We did not hear anything more from him. The theatre was built precisely according to the sketch we had made, but by another architect. He did not at any time tell us that he would not employ us."

The proof for the defendant put in narrative form is as follows:

"I also told Mr. Gaffney I got a notion to build a picture show on Fourth street, which I am looking

for the locations; I got three in view; one was Mr. T. P. Taylor's and the next Johnnie Klein and the third one was Oscar Fenley's, but to secure the lot I would like to make a few sketches, just floor sketches, how many feet I can put in that lot on sixty feet, also on fifty-one feet, and Mr. Gaffney done so, he made some sketches. I went to some various parties trying to get a lot and didn't secure it, but I secured a lot from Mr. Oscar Fenley. When the lot was secured, I was ready to make papers out. I made a lease for ninety-nine years; immediately I went right to Mr. Gaffney's office with my son Sam, the oldest. When I told Mr. Gaffney I am ready to make out the plans and specifications; I said, 'Go ahead, make the plans and specifications, I am ready to go to building.' Mr. Gaffney said, 'Mr. Switow, I will make—sign a contract at three and a half per cent without any supervision and six per cent for supervision.' I told Gaffney right there, 'Since when did you change your price; I thought you were working on one per cent basis.' He said, 'Right now. I worked for you for nothing other places and I want my regular commission.' I told Mr. Gaffney right then 'I would not give you this contract,' and left him immediately and went to Joseph & Joseph and they made my plans out for the building.''

The testimony of the defendant is sustained by his son, Sam Switow. The testimony of Mr. Gaffney is sustained by his partner Mr. Epping. On this testimony the circuit court by instruction No. 1 told the jury, in substance, that if they believed from the evidence that the contract was as stated by Mr. Gaffney they should find for the plaintiff the difference between the contract price for the work and the cost that Gaffney and Epping would reasonably incur in doing the work, and unless they so believe they should find for the defendant. By instruction No. 2 the court told the jury that unless the contract was made by the plaintiffs and the defendant as set out in the first instruction they should not find anything for the plaintiffs for the services they rendered. Instruction No. 3 is in these words:

"If you believe from the evidence in this case that the minds of the plaintiffs and defendant did not meet upon the terms of an agreement, that is to say, that they did not both understand the terms of

the proposed agreement and that one of them under-
stood said agreement to be one thing and the other
another thing, then the court instructs you that no
contract was entered into in this case and the law of
the case is for the defendant and you should so
find.''

While the instruction states correctly the principle
of law, it has no application whatever to this case and
tended to mislead the jury. There was no evidence that
either of the parties used language that the other did not
perfectly understand or that the words were used by one
person in one sense and understood by the other in an-
other. The plaintiffs testified unequivocally ,that a cer-
tain conversation took place. The defendant testified
unequivocally that this conversation did not take place.
He and his son testified to another conversation, which
they said took place and the plaintiffs testified that this
conversation did not take place and that the son was
not present at the time the contract was made. It is
simply a question here for the jury whether the contract,
alleged by the plaintiffs, was made. Instruction 3 was
misleading and should not have been given. 14 R. C. L.,
pp. 786-790.

Upon another trial before the words ''six per cent,''
wherever they occur in instruction 1, the court will add
the words ''the customary architects' fee,'' so that the
instruction will read, ''The customary architects' fee of
six per cent.'' The court properly told the jury that the
plaintiffs could recover nothing for the work they had
done unless the jury found for them as submitted in
instruction 1.

The court properly allowed the witness, Fred Joseph,
to testify as to his qualifications and experience as an
architect. For this was necessary to show his com-
petency as a witness and to give his judgment as to the
cost plaintiffs would have incurred in carrying out the
contract and other like matters as to which he testified.
But for the same reason the court should have allowed
similar testimony as to the qualifications and experi-
ence of plaintiffs as architects, to show their competency
to testify as experts on these matters and the value of
their testimony.

The contract sued on is simply a contract for work.
The measure of damages for the breach of the contract
is the same as in the case of any other contractor. The

plaintiffs were not required to get other work and it is not material that they had or did not have other work. All the questions asked on the trial on this subject should have been excluded. Where there is a contract for personal services for a year or a month the plaintiff is required to minimize his loss and not to remain idle if he can avoid it. But that rule has no application to a contract to do a definite work, as in the case of a contractor, a carpenter or an architect. Harness, et al. v. Kentucky Fluor-Spar Co., 149 Ky. 65; 8 R. C. L., p. 445.

In 17 C. J., p. 775, after stating the rule for contracts for purely personal services, this is added:

"This rule does not apply to contracts not requiring all or a great portion of the time of plaintiff, or which do not preclude plaintiff from undertaking and being engaged in the performance contemporaneously of other contracts, or to contracts for the performance of particular acts."

See note 20, A. L. R. 1357.

A successful architect necessarily has a number of jobs going up at the same time, otherwise his business would of necessity be small. He does a large part of his work through those he employs. It is his work and he is responsible for it, though done by his clerks or assistants. He supervises it and if the contract is broken he may recover for the loss of his contract, just as the contractor who undertakes to build the house may recover if his contract is broken. In either case the measure of recovery is the contract price less the reasonable cost of doing the remainder of the work. In a note to Harness v. Kentucky Fluor-Spar Co., 149 Ky. 65, collecting many cases, 31 Ann. Cas. 810, after a statement of the rule as to contracts for certain personal services this is added:

"On a breach of contract for a specific undertaking, on the other hand, the measure of damages is the difference between the contract price and the cost to the plaintiff of doing the work."

That rule was applied by this court in that case to a contract to mine certain fluorspar. The same measure of damages was followed in Horn v. Carroll, 90, S. W. 559, and in Owensboro Shovel Co. v. Moore, 154 Ky. 431, where the contract was to deliver ties and was broken;

and in Stearns Lumber Co. v. Inman, 154 Ky. 251, where the contract was to cut and haul a certain amount of timbed. In Henry v. Vance, 111 Ky. 72, where the lawyers, who had been discharged on the ground that the contract was obtained by fraud, sued to recover the contract fee of $1,662.50, the court directed this instruction to be given as to the measure of damages if the jury found for the plaintiffs:

> "The jury will find for the plaintiffs $1,662.50, less such proportion of that sum as is reasonably represented by the labor and attention and expense that would have been required of plaintiffs to complete their undertaking, but which they did not do."

We do not see that this case can be distinguished from those cited, and on another trial the court will instruct the jury on the measure of damages as in the instruction above quoted.

In Gordon v. Morrow, 186 Ky. 713, the recovery of the attorneys who had been discharged was limited to a reasonable compensation for what they had done on the ground that their contract fee was conditional on the amount that was recovered, and no recovery having been made, it was pure guesswork what they would have received, and a reasonable compensation for what they had done was the only practicable measure of recovery. But in that case Henry v. Vance, on the facts there shown, was approved. In the subsequent case of Bright v. Turner, 205 Ky. 188, the right of the client to discharge his attorney was again upheld.

The right of action is the same whether the amount of work the plaintiffs did under the contract before it was breached was of small or large value. If the contract was made as they allleged and was breached, the plaintiffs are entitled to recover the contract price, less the reasonable cost they would have incurred in doing the work contracted for, as set out above. On another trial the court will so instruct the jury.

The court properly refused to allow the copy of the Motion Picture News to be read to the jury. It threw no light on any issue in the case. A number of other matters are relied on which do not appear in the bill of exceptions and cannot therefore be considered here.

Judgment reversed and cause remanded for a new trial.

RESPONSE TO THE PETITION FOR REHEARING BY THE COURT.

The petition for rehearing in this case and in a number of other cases filed of late indicates a misunderstanding as to how the work of the court is done. When cases are submitted they are sent out by the Chief Justice to the judges and commissioners in rotation. The one to whom the case is assigned reports the case when the court meets for consultation. It is then considered by the court, which determines whether the judgment shall be affirmed or reversed, and also determines what shall be written in the opinion. The opinion is then prepared by the judge or the commissioner having the record, and it is then read to the court and, if need be, corrected by it. It is then handed down. It is the opinion of the court and is often not written as the writer would have written if it were his personal opinion. If the facts of the case are fairly stated in the opinion, the conclusions of law may be accepted as the conclusions of the court on the law of the case. The writer of the opinion is responsible for the statement of the facts, but the court alone is responsible for the conclusions of law drawn from those facts.

When a petition for rehearing is filed in a case written by one of the commissioners, the record is sent to one of the judges. If a petition is filed in a case written by one of the judges, the record is sent to a judge other than the writer of the opinion. In either case, the judge to whom the record is sent examines the case and reports to the court the questions of law and fact. The case is then reconsidered by the court and such disposition is made as the court determines.

In this case the facts are correctly stated. The judgment was reversed for the giving of the instruction indicated in the opinion, because that instruction practically told the jury to find for the defendant if they were in doubt under the evidence.

The petition is overruled.