## Jefferson Standard Life Insurance Co. v. Hurt.
## Atlantic Life Insurance Co. v. Same.

(Decided May 8, 1934.)

BEN V. SMITH & SON and BEN D. SMITH for appellants.
W. N. FLIPPIN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The Jefferson Standard Life Insurance Company on August 17, 1928, issued and delivered to Claude A. Hurt a policy of insurance of the face value of $5,000. The Atlantic Life Insurance Company issued and delivered to him on December 6, 1928, its policy of the face value of $3,000.

The policy of the Jefferson Standard Life Insurance Company provides "on due proof to the company" it will "pay to the insured for each completed month of such disability after receipt and approval of said proof and during the further continuance of such disability a monthly income of one per cent. of the face amount of this policy during the life of the insured," "if the insured has become totally disabled by bodily injuries or disease and will be permanently, continuously and totally prevented thereby for life from pursuing any occupation or employment whatsoever for remuneration and profit."

The Atlantic Life Insurance Company by its policy agreed to pay the insured "immediately upon the approval of said proof $10.00 for each $1,000.00 of the face value of this contract and a like amount on the same day in each month thereafter during the lifetime of the insured and the continuance of such disability." It defines "total disability" thus:

> "Disability shall be considered total when the insured becomes so disabled by bodily injury or disease that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit; and disability shall be considered permanent when the insured [a] will be continuously totally disabled for life, or [b] has been totally disabled continuously for a period of three months immediately preceding the receipt of proofs."

Hurt claimed before he arrived at the age of 60 and

previous to the 6th day of May, 1932, he "became totally and permanently disabled by disease and will thereby be continuously, totally and permanently disabled for life"; and on July 28, 1932, when all premiums due under the policies had been fully paid as they matured, he furnished the insurance companies proofs of his disability, showing that it had existed more than three months prior thereto and that he was "totally and permanently disabled from disease and thereby prevented from engaging in any occupation whatsoever for remuneration or profit," and that he demanded of them the payment of the disability installments in accordance with their respective policies, which was refused.

He instituted an action in the Pulaski circuit court against the Atlantic Life Insurance Company to recover of it $30 per month from the 6th day of May, 1932, to the 6th day of December, 1932, amounting to $210, and another against the Jefferson Standard Life Insurance Company to recover of it $50 per month from May 6, 1932, aggregating $510. The actions were tried before a jury, resulting in a verdict in his favor for the amounts sought; judgments were entered accordingly. To reverse these judgments, the Jefferson Life Insurance Company and the Atlantic Life Insurance Company are here asking a reversal on the grounds the court erred "in sustaining demurrers to paragraph No. 2 of the first amended answer and to the second amended answer"; "in excluding testimony which conduced to prove Hurt's disability did not result solely from causes originating after the delivery of the policy."

To sustain the insistence the court erred in sustaining the demurrers to their first and second amended answer, they argue "the insured under the policy containing the disability clause, must to minimize liability submit to reasonable and proper treatment to which a reasonably prudent man would ordinarily submit, and where he fails to follow the advice of competent physicians, as to the course he should pursue, such advice being reasonable and proper, precludes him, as a matter of law, to a recovery."

To support this theory they cite and rely upon Cody v. John Hancock Mutual Life Insurance Company, 111 W. Va. 518, 163 S. E. 4, 86 A. L. R. 354; Edward T. Snook's Case, 264 Mass. 92, 161 N. E. 892; Jendrus v. Detroit Steel Products Co., 178 Mich. 265, 144 N. W.

563, L. R. A. 1916A, 381, Ann. Cas. 1915D, 476; Schnei-der on Compensation Law, sec. 496, vol. 2, pp. 1644, 1645.

In the Cody Case the suit was predicated on a clause of a policy whereby the company covenanted to pay the insured if his disability was "total." He became, as he claimed, disabled for eight months from a toxic condition of the blood. The Supreme Court of West Virginia, applying the general applicable principle universally applied by the courts where the plaintiff sustains an injury or damage from actionable negligence and also a clause of the Workmen's Compensation Law, held it was the insured's duty to minimize his damages. This court has often adopted and applied, in cases in which the basis of the action was trespass or a tort, the rule "if the injury or disease of the plaintiff may be corrected by treatment or thereby materially decreased, it is his duty to exercise ordinary care in an effort to effect a cure or to relieve himself, and his failure to do so precludes or mitigates his damages according to the facts in the particular case." H. T. Whitson Lbr. Co. v. Upchurch, 198 Ky. 127, 248 S. W. 243; Gaffney v. Switow, 211 Ky. 232, 277 S. W. 453. Also we have applied this principle in actions ex contractu in which the breach of the contract involved the elements of negligence and in other cases in which not to apply it would be equivalent to allowing a recovery predicated upon the wrongdoing or positive negligence of the recovering party. In proceedings under the Workmen's Compensation Law, we have observed and administered section 4886, Kentucky Statutes, which expressly provides:

> "No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability may be aggravated, caused or continued, by an unreasonable refusal, failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice."

But we have never gone so far as to apply the doctrine of minimizing damages or the above provision of the Workmen's Compensation Law to a policy of insurance.

In actions on insurance policies we have consistently construed them as contracts definitely fixing the

liability of the insurer and measuring the right of the insured to a recovery. The liability of the insurer and the right of a recovery by the insured must be determined by the language of the policy, the same as a contract about any other subject-matter. Mutual Benefit Life Ins. Co. v. O'Brien (Ky.) 116 S. W. 750. The parties may insert in it any provision they desire, or agree upon, limiting the liability of the company or the rights of the insured, provided it is not unreasonable, illegal, or contrary to public policy. Glens Falls Ins. Co. v. Elliott, 218 Ky. 327, 291 S. W. 705; Standard Auto Ins. Ass'n v. Neal, 199 Ky. 699, 251 S. W. 966, 35 A. L. R. 1468.

In every case, in determining the liability of the company under its policy and the right of the insured thereunder, the court must give effect to all its provisions, words, and phrases, liberally construed in favor of the insured (Ætna Life Ins. Co. v. Bowling Green Gas Light Co., 150 Ky. 732, 150 S. W. 994, 43 L. R. A. [N. S.] 1128), and, when interpreting and construing it, the court may not add to or strike therefrom any language, so as in effect to constitute a new condition (Fidelity & Casualty Co. v. Bynum, 221 Ky. 450, 298 S. W. 1080). This rule is based upon the theory the court cannot make a contract of insurance for the parties, under the guise of interpretation or construction, so as to insert or exclude words or phrases not contained in it; but must define the liability of the insurer and determine the right of the insured according to its terms and conditions as made by the parties themselves. Phœnix Ins. Co. v. Stevenson, 78 Ky. 150; Haselden v. Home Ins. Co. of New York, 247 Ky. 530, 57 S. W. (2d) 459. It is the duty of the courts to take the words of the policy as they are found in it and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed.

It is a matter of general knowledge that some policies bind the insurer to make a monthly or a quarterly disability payment to the insured as per its terms, for "total disability," others for "temporary total disability," yet others for "partial disability" or "temporary partial disability" or "partial permanent disability," and still others bind the insurer to pay the insured if he becomes "totally disabled by bodily injuries or disease and will be permanently, continuously and

totally prevented thereby for life from pursuing any occupation or employment for remuneration or profit."

In interpreting and construing these types of policies, the court is unauthorized to construe these terms to mean the same, or to create identically consensual relations of the insured and insurer. To do so would require the interpolation or the exclusion of language in the policies not agreed upon by the parties. We have not now before us a policy binding the insurer to pay the insured in the case of "total disability," "temporary total disability," or "partial permanent disability," or "temporary partial disability," or "partial permanent disability." As to whether the insurer is entitled to invoke the doctrine of minimizing damages, or whether it is the duty of the insured to comply with the doctrine of minimizing damages, where either of those terms alone is used in the policy, is not before us. We express no opinion in respect to the obligation of the one or the duty of the other thereunder.

Plainly the language of the policies before us forbids the application of the doctrine of minimizing damages as the court applied it in the case of Cody v. John Hancock Mut. Life Ins. Co., 111 W. Va. 518, 163 S. E. 4, 86 A. L. R. 354, and as it was seemingly acquiesced in by the court in McMahon v. Supreme Council, 54 Mo. App. 468, and also in Edward T. Snook Case, 264 Mass. 92, 161 N. E. 892. To construe the quoted words of the policy now before us so as to allow the doctrine of minimizing damages to control or determine or effect the insured's right of recovery is to be forgetful of the intention and the purpose of the parties as they are expressed in the policies. It was incumbent upon Hurt to establish by competent relevant evidence, to the satisfaction of the jury, that his disability was not only total, but permanent and continuous, and that he was and will be totally thereby prevented for life from pursuing any occupation or employment for remuneration or profit. But to construe the policies to mean that, even though Hurt's disability was of the type defined therein and it was his duty to establish the same so to be to the satisfaction of a jury, but the liability of the companies to him therefor terminated if the disease causing such disability was "aggravated, caused or continued, by unreasonable refusal or neglect to submit to or follow any competent surgical treatment or surgical aid or advice," would require the employment of language not

contained in either policy. A complete confutation of the insistence the insurance companies are entitled to have the policies interpreted and construed as to authorize such defense is, neither of them contains any words, phrase, or clause warranting such a construction; and the court is without authority to insert therein, by the process of analogy or otherwise, the necessary language required to support such a defense.

In Marsh v. Peoria Life Ins. Co., 133 Kan. 191, 299 P. 934, 937, in which was involved a policy providing for a monthly benefit to be paid to the insured "for permanent and total disability," the court, in affirming the act of the trial court refusing an instruction to the effect it was the duty of the plaintiff to exercise every reasonable effort to aid recovery, used this language:

> "The contract does not so provide. No doubt it is the moral duty of every person to make the most of himself under even the most adverse circumstances; but the issue in this case was whether plaintiff's disability was permanent. * * * The court has taken the words of the policy as it finds them, and as persons would usually and ordinarily understand them when used to express the purpose for which they were employed. So considered, the evidence authorized the jury to say that, while this man can do a number of things, chiefly petty, he cannot work or conduct business for compensation or profit, and never will be able to do so."

This pronouncement is consonant with the rules of construction we have consistently followed when interpreting and construing contracts of insurance which deprive the Jefferson Standard Life Insurance Company and the Atlantic Life Insurance Company of the right to invoke the doctrine of minimizing damages.

The policies under consideration undertake to pay to Hurt a monthly sum for disability only when a condition of permanent, continuous, total disability has been shown to exist. However, the showing requisite to set in motion the monthly installment payment under the disability provisions of the policies need not be absolute, such as would be afforded by death. The disability provision contemplates continuance of life of the assured while there is hope, however faint. Metropolitan Life Ins. Co. v. Noe, 161 Tenn. 335, 31 S. W. (2d)

689; Maze v. Equitable Life Ins. Co. of Iowa, 188 Minn. 139, 246 N. W. 737, 740.

It is a matter of general information that physicians and surgeons possess extraordinary learning and skill which belong only to few men of rare endowments; yet they are neither omniscient nor infallible, for oftentimes their patients recover or die, their combined opinions to the contrary notwithstanding. For this reason, when they testify in this character of case, their words should not be accorded an extremely technical meaning, but rather accepted as if and when used by persons of ordinary information and understanding. It is to the latter class the jurors belong to whom the law assigns the duty of testing and weighing and valuating the evidence in every such case. It is therefore fair to assume when the physician or surgeon expresses his opinion to the effect, from his examination and knowledge of an insured, he had or had not "become totally disabled by bodily injuries or disease" and will or will not "be permanently, continuously and totally prevented thereby for life from pursuing any occupation or employment whatsoever for remuneration or profit," he uses the words "permanently," "continuously," and "totally," in their popular sense, and the jury so accepted them.

It is clear from the insurance contracts the word "permanent" therein is not used in the extreme sense of absolute "perpetuity," "everlasting," "lifelong," "unchangeable," "forever," etc., but is used relatively in contradistinction from "temporary" or "transient." The words "permanently" and "continuously" in the policies are alike in significance, of the same import and meaning. This is the meaning which a person of usual and ordinary understanding would accord them. Losnecki v. Mutual Life Ins. Co. of New York, 106 Pa. Super. 259, 161 A. 434, 435; Maze v. Equitable Life Ins. Co. of Iowa, supra; Kurth v. Continental Life Ins. Co., 211 Iowa, 736, 234 N. W. 201, 202.

In the Kurth Case the court was called upon to deal solely with the phrase, "total, permanent and continuous disability." The court expressed itself thus:

"The phrase, 'and that he will be wholly and continuously prevented thereby,' must be construed as not implying absolute certainty, but as a reasonable and fair presumption that 'he will be wholly and continuously prevented thereby from pursuing any

gainful occupation.' The words 'permanently' and 'continuously,' standing alone, would imply that the disability was a lasting and absolutely fixed condition, but when these words are taken in connection with the language used in other provisions of the contract, the only fair construction to be placed on such words is, not that the disability which has existed * * * must exist forever. * * *''

It is obvious, from all of the provisions of the policies here involved, the disability by which the benefits may accrue and become obligations of the companies is not absolutely to be accepted to be absolutely permanent and absolutely continuous and absolutely to prevent the insured forever or during his lifetime from engaging in any gainful occupation.

The policies, as an entirety, also plainly mean that when, and if, such permanent, continuous, and total disability, in the future, might be removed by some means or other, despite the contrary good-faith opinions of learned physicians and surgeons, the companies may receive in that event the benefits to which they may be entitled under their respective policies. Maze v. Equitable Life Ins. Co. of Iowa, and Kurth v. Continental Life Ins. Co., supra. In the language of the court in Maze v. Equitable Life Ins. Co. of Iowa:

"We are of the opinion that the authorities support the conclusion that in insurance parlance, when used in such a policy as now before us, the words 'totally and permanently disabled' contemplate a disability at the time of the continuance of the claim, which reasonably satisfies a fair and impartial mind that the insured is then totally disabled and may reasonably be expected to continue in such condition for at least an indefinite period of time. The vital question thus involved must be determined on the evidence in each individual case. It necessarily follows that such a policy contemplates the accrual of liability for installment payments under conditions which may eventually prove temporary only, although at the time indicative of permanency. As said in the Hawkins. Case [205 Iowa, 760, 218 N. W. 313], 'fairness to the policyholder requires that reasonable evidence of permanency be accepted and the benefit paid so long as such apparent permanency exists, but, if it later appears.

that the seeming permanent condition is not such, then the company shall be no longer held to continue paying benefits.' "

In accordance with this principle, this court in Equitable Life Assurance Society of the United States v. Preston, 253 Ky. 459, 70 S. W. (2d) 18, decided in March, 1934, directed a reversal because a decree was entered for the total disability installments without directing retention of the case on the docket, with the privilege of the insurer to relieve itself, in the event the cause of the insured's disability might be removed, of the payment of installments maturing after the entry of the decree, notwithstanding the verdict was for a lump sum, for due and future installments.

In Equitable Life Assurance Society of the U. S. v. Goble, 254 Ky. 614, — S. W. (2d) — , decided in March, 1934, the rights of the insurer, under the provisions of the policy, as reserved in the judgment dealing with due and future installments, were explained and elaborated.

Hurt only sought to recover the payments he conceived to be due at the time of the institution of the actions. Therefore the liability of the insurance companies for and his right to recover future monthly benefits are not here involved. The effect of the verdict and judgment entered thereon was merely to determine the permanency and continuance of his disability at the date of the verdict and judgment, and not in the future.

To support their contention the court erred in excluding the testimony which conduced to prove Hurt's disability did not result solely from causes originating after the delivery of the policy, the companies argue Hurt "is said to be drawing a pension and it was proper to examine him to ascertain whether it was for bronchitis or kidney trouble." "If he was drawing for either disability then it originated before the date of the policy and would have been a complete defense to the action." This argument is predicated on speculation or surmise and to admit evidence relative to his drawing a pension would no more than establish a doubtful inference, which is not permissible. Mutual Life Ins. Co. v. Marsh, 186 Ark. 861, 56 S. W. (2d) 433.

Before Hurt became "dsiabled," he was a traveling salesman. The evidence of the insurance companies is

plenteous to establish he was physically and mentally capable of performing the duties of his occupation to the extent of from 50 per cent. to 70 per cent. normal. There was evidence equal in quantity and weight to the contrary. It was the exclusive province of the jury to decide this issue on the evidence produced by the parties. Not being flagrantly against it, we are not authorized to disturb the verdict. For an interesting discussion of the liability of an insurance company under a like policy, issued to a traveling salesman, who claimed he was totally disabled, thereby prevented from pursuing his occupation, the reader is referred to Mutual Life Ins. Co. of N. Y. v. Marsh, supra.

Perceiving no reversible error, the judgment is affirmed.