JOHN HANCOCK MUT. LIFE INS. CO. *v.* SPURGEON.

(*Knoxville*, September Term, 1939.)

Opinion filed December 16, 1939.

320

KELLY, PENN & HUNTER, of Kingsport, for plaintiff in error.

H'ARRY L. GARRETT, of Kingsport, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

Spurgeon, hereafter referred to as plaintiff, was insured under a group policy issued to employes of the Tennessee Eastman Corporation. The policy insured each employe against total disability. On October 10, 1937, this action was commenced to recover on the policy. It was stated in the declaration and shown by proof that plaintiff became totally disabled on February 7, 1937, and gave notice of the disability August 16, 1937. The company denied that plaintiff was totally and permanently disabled, but, if so, said he did not become disabled while the contract of insurance was in force.

The cause was tried before the court and jury, resulting in a verdict for plaintiff. On appeal, the defendant assigned as error (1) that upon the undisputed facts the plaintiff was not shown to be totally and permanently disabled; (2) the trial court erred in charging the jury that in the absence of a provision in the contract of insurance requiring it, the insured could not be compelled

to submit to a surgical operation to remove the disability; and (3) that the policy had lapsed by non-payment of premiums and the termination of the plaintiff's employment with the Eastman Corporation.

The Court of Appeals confined discussion to the question of whether or not the trial judge erred in refusing to direct a verdict, and pretermitted defendant's assignments of error to the charge and upon the insistence that the insurance had terminated. After reviewing the evidence, the Court said: "We reach the conclusion that when under all the evidence insured's condition is such as to result in total disability which may be removed by a minor, non-serious operation, he is not permanently and totally disabled within the meaning of the policy providing for disability benefits only in case of total and permanent incapacity." Upon that conclusion, the judgment was reversed. Both parties filed petition for *certiorari*, the plaintiff to review the Court's action in dismissing the suit, and defendant to review the pretermitted questions.

Looking to the evidence, we find that after plaintiff had worked for Tennessee Eastman Corporation three years and five months, he was forced to quit because of ill health; that before quitting, he had suffered with hemorrhages from hemorrhoids, weakness and smothering spells; that these ailments became worse as he worked on, and he lost weight from one hundred and forty-three pounds to one hundred and twenty-eight; and became so weak, sick and nervous, that he could not work at all after February 7, 1937, although he attempted to work one day in April, 1937. He had been continuously insured under the policy for more than three years.

Drs. G. C. Keener and Paul Cox examined the plaintiff. Both testified that he was anemic, due to loss of

blood from hemorrhoids, that his condition was permanent, and that he was totally unable to engage in labor; but both stated that an operation was the only cure for hemorrhoids and after a successful operation correcting the hemorrhoidal condition, the plaintiff would get well. We quote from Dr. Cox: "He was anemic and losing blood and was not able to engage in labor for wages. In order to improve his condition, he would first have to be given a blood transfusion and then correct the hemorrhoid condition by a surgical operation. As long as his condition had run, that was the only way anything could be done for him."

Defendant introduced Drs. McNeer, Tipton and Wiley. They testified that an operation for hemorrhoids was a minor operation and, without complications, was not serious, and that the disability could be removed by an operation.

██ ██ Upon the facts presented by the record, the trial judge committed no error in refusing to direct a verdict, nor did he err in charging the jury that in the absence of a provision in the policy requiring it, the insurer could not avoid liability for refusal of the insured to submit to an operation to remove the disability.

The Court of Appeals rested its conclusion upon the authority of *Prudential Insurance Co.* v. *Davis*, 18 Tenn. App., 413, 78 S. W. (2d), 358, where it was held that one is not totally and permanently disabled when according to the undisputed testimony the cause of disability could be removed by a non-dangerous, surgical operation. It was shown in that case that Davis was injured by accident that fractured his hip; that after recovery from the injury he could walk like an ordinary man, but certain movements were painful, the pain being caused by a small spur of bone, the removal of which would relieve

the pain and remove the disability. The Court said that the insured had the burden of making out a case of permanent total disability, and that he failed to make out his case where the undisputed testimony disclosed that he suffered only from a minor ailment, removable by a non-dangerous operation.

This question first came before the Court of Appeals in 1927, in the case of *Tittsworth* v. *Ohio National Life Insurance Co.*, 6 Tenn. App., 206. We quote from the opinion of Judge DeWitt therein as follows:

"It is therefore insisted that the continuing disability of the complainant is not due to the accident, but to his unreasonable refusal to have performed an operation which would restore him to sound condition; that it is his duty thus to prevent any aggravation or continuation of the disability; that upon him is the duty to take such steps to restore himself to sound condition as an ordinarily careful and prudent man would take under such circumstances. The question thus presented is not controlled by the rule applied in cases arising under the Workmen's Compensation Act, for this Act contains in section 25 thereof, a provision which obligates the employer to furnish and the employee to accept such medical and surgical treatment as may be reasonably required. In *Sun Coal* v. *Wilson*, 147 Tenn., 118, 245 S. W., 547, this provision of said Act was applied so that an injured employee suffering from hernia and refusing to have an operation performed which would cure it, was denied compensation provided in the Act. The court held that the proposed operation was reasonably required; that reason and common sense dictated that the claimant submit to a surgical operation; but the court also said:

" 'We do not wish to be understood as holding that,

under all circumstances, a claimant should submit to an operation when so requested by the employer, but we have not a case here where the operation is serious or dangerous, or where "the physicians disagree as to the advisability of an operation." '

"Nor is this case analogous to that of a plaintiff suing for damages for personal injuries, who refuses unreasonably to submit to a surgical operation, for in such case it is the duty of the plaintiff to mitigate the damages by submitting to such operation, following the advice or instructions of a physician or surgeon. In such case it is generally held that the proximate cause of the injury or disability at present existing, is at least in part the plaintiff's own wilfulness or neglect. See *Donovan* v. *New Orleans Railway & Light Co.*, 132 La., 239, 61 So., 216; 48 L. R. A. (N. S.), 109, and notes thereunder.

"In this case the complainant seeks to recover upon a contract of insurance. This contract contains no provision, express or implied, that in case of injury or disability the insured will submit to a surgical operation. It is probably presumed that the insured, out of a motive of self-protection or self-preservation, would obtain such medical and surgical treatment as would be necessary; but this matter is left open in the contract. It is not the subject of any stipulation. It is a matter which the insured is left to determine for himself; and if he, through apprehension, or for any other cause, has determined that he will not submit himself to an operation, he is under no contractual obligation to do so.

"It is well settled that it is against the policy of this State to permit implications in insurance contracts. As to contracts of life insurance it is expressly provided by chapter 441 of the Acts of 1907, section 3275a1 of Shannon's Code, that the entire contract of insurance

shall be contained in the policy. *Jackson* v. *Loyal Additional Benefit Association*, 140 Tenn., 495, 205 S. W., 318; *Arnold* v. *Insurance Co.*, 131 Tenn., 720, 177 S. W., 78; *Fields* v. *Metropolitan Life Insurance Co.*, 147 Tenn., 464, 249 S. W., 798, 36 A. L. R., 1250. Such requirement of a surgical operation, though a minor one and reasonable, under any circumstances, not being contained in the stipulations of the written contracts, the defendant insurance company is not entitled to take advantage of the failure or refusal of the insured to submit to such an operation.''

The Supreme Court of West Virginia, in 1932, in *Cody* v. *John Hancock Mutual Life Insurance Co.*, 111 W. Va., 518, 163 S. E., 4, 5, 86 A. L. R., 354, 358, took a contrary view to that expressed in the *Tittsworth case,* the court holding that it was the duty of plaintiff to submit to medical treatment, saying: ''Was it plaintiff's duty in the premises to have the infected tooth extracted, the diseased gums treated, and the diseased tonsils removed promptly, or could he postpone acting on the advice of his physician and claim disability benefits under the policy for an indefinite period? No cases directly in point are cited, and we find none. Decisions in tort actions and workmen's compensation cases are closely analogous to the case at bar. It is the general rule in both of those classes of cases that the claimant must act reasonably to minimize the disability.''

This question came before the Court of Appeals again, in 1934, in the case of *Prudential Insurance Co.* v. *Davis*, 18 Tenn. App., 413, 78 S. W. (2d), 358, in which it followed the Cody case and departed from the *Tittsworth case* in principle.

This question was before the Court of Appeals for the third time, in 1938, in the case of *Shane* v. *Equitable*

*Life Assurance Society of U. S.*, 22 Tenn. App., 85, 89, 90, 118 S. W. (2d), 570, 573, in which it was said:

"It was not stipulated in the policy that the insured should obtain medical treatment if necessary. It was a matter which the insured was left to determine for herself. She was under no express contractual obligation to do so. *Tittsworth* v. *Ohio National Life Insurance Co.*, 6 Tenn. App., 206, 209; *Temples* v. *Prudential Insurance Co.*, 18 Tenn. App., 506, 513, 79 S. W. (2d), 608.

"While in personal injury and workmen's compensation cases it is the duty of the person injured to procure medical and surgical attention, as it affects the amount of the recovery, the right to recover insurance benefits, where the insured is totally and permanently disabled, cannot be affected by the failure to have medical attention. 6 Cooley's Briefs on Insurance, 5228, 5229."

In each of the three cases decided by the Court of Appeals this Court denied the petition for writ of *certiorari.* Upon further consideration and investigation, we find that all three cases involve the same principle, and conclude that the decision in the *Tittsworth case* should be adhered to as stating a sound rule which is supported by the decided weight of authority. As a matter of fact, we have been unable to find the Cody case approved by any court of last resort, while the Kentucky Court of Appeals and the Supreme Courts of Colorado and Alabama have expressly declined to follow it, and the Supreme Courts of Kansas and South Carolina have adopted the views expressed in the *Tittsworth case.*

The Court of Appeals of Kentucky, in 1934, in the case of *Jefferson Standard Life Insurance Co.* v. *Hurt*, 254 Ky., 603, 72 S. W. (2d), 20, 22, in its opinion said:

"In the Cody Case the suit was predicated on a clause

of a policy whereby the company covenanted to pay the insured if his disability was 'total.' He became, as he claimed, disabled for eight months from a toxic condition of the blood. The Supreme Court of West Virginia, applying the general applicable principle universally applied by the courts where the plaintiff sustains an injury or damage from actionable negligence and also a clause of the Workmen's Compensation Law, held it was the insured's duty to minimize his damages. This court has often adopted and applied, in cases in which the basis of the action was trespass or a tort, the rule 'if the injury or disease of the plaintiff may be corrected by treatment or thereby materially decreased, it is his duty to exercise ordinary care in an effort to effect a cure or to relieve himself, and his failure to do so precludes or mitigates his damages according to the facts in the particular case.' *H. T. Whitson Lumber Co.* v. *Upchurch*, 198 Ky., 127, 248 S. W., 243; *Gaffney* v. *Switow*, 211 Ky., 232, 277 S. W., 453. Also we have applied this principle in actions ex contractu in which the breach of the contract involved the elements of negligence and in other cases in which not to apply it would be equivalent to allowing a recovery predicated upon the wrongdoing or positive negligence of the recovering party. In proceedings under the Workmen's Compensation Law, we have observed and administered section 4886, Kentucky Statutes, which expressly provides:

" 'No compensation shall be payable for the death or disability of an employee if his death is caused, or if and in so far as his disability may be aggrevated, caused or continued, by an unreasonable refusal, failure or neglect to submit to or follow any competent surgical treatment or medical aid or advice.'

"But we have never gone so far as to apply the doc-

trine of minimizing damages or the above provision of the Workmen's Compensation Law to a policy of insurance.

"In actions on insurance policies we have consistently construed them as contracts definitely fixing the liability of the insurer and measuring the right of the insured to a recovery. The liability of the insurer and the right of a recovery by the insured must be determined by the language of the policy, the same as a contract about any other subject-matter. *Mutual Benefit Life Insurance Co.* v. *O'Brien* (Ky.), 116 S. W., 750. The parties may insert in it any provision they desire, or agree upon, limiting the liability of the company or the rights of the insured, provided it is not unreasonable, illegal, or contrary to public policy. . . .

"It was incumbent upon Hurt to establish by competent relevant evidence, to the satisfaction of the jury, that his disability was not only total, but permanent and continuous, and that he was and will be totally thereby prevented for life from pursuing any occupation or employment for remuneration or profit. But to construe the policies to mean that, even though Hurt's disability was of the type defined therein and it was his duty to establish the same so to be to the satisfaction of a jury, but the liability of the companies to him therefor terminated if the disease causing such disability was 'aggravated, caused or continued, by unreasonable refusal or neglect to submit to or follow any competent surgical treatment or surgical aid or advice,' would require the employment of language not contained in either policy. A complete confutation of the insistence the insurance companies are entitled to have the policies interpreted and construed as to authorize such defense is, neither of them contains any words, phrase, or clause warranting

such a construction; and the court is without authority to insert herein, by the process of analogy or otherwise, the necessary language required to support such a defense.''

In 1935, in *Prudential Insurance Co. of America* v. *Brasier*, 260 Ky., 240, 241, 84 S. W. (2d), 43, 44, the court again considered the question before us and said:

''. . . Plaintiff is suffering from an inguinal hernia that he claims to have developed in October, 1932, after the policy in question was issued. It is not claimed that the plaintiff in his present condition is not actually totally and permanently disabled. The appellant's only grounds for reversal are: (1) That plaintiff is not totally disabled within the meaning of the policy because the condition of which he complains might be cured by an operation; and (2) that plaintiff actually suffered a hernia prior to the date of application for the policy and falsely stated in the application that he had never had a hernia.

''Appellant relies principally upon the case of *Cody* v. *John Hancock Mutual Life Insurance Co.*, 111 W. Va., 518, 163 S. E., 4, 86 A. L. R., 354, wherein it was held that an insured must minimize a disability which has overtaken him by submission to treatment which an ordinarily prudent person would accept under the circumstances. In *Jefferson Standard Life Insurance Co.* v. *Hurt,* 254 Ky., 603, 72 S. W. (2d), 20, 22, this court considered the Cody Case and said:

'' 'But we have never gone so far as to apply the doctrine of minimizing damages . . . to a policy of insurance.'

''The opinion likewise refers to and quotes from the case of *Maresh* v. *Peoria Life Insurance Co.*, 133 Kan., 191, 299 P., 934, wherein the court, under the terms of

the policy before it, refused to approve an instruction on the duty of an insured to minimize his disability. We held, finally, that there was nothing in the wording of the policy in that case under which we could infer an intention to require an assured to minimize his damages. The policy before us does not insure against 'incurable disability,' but insures against total and permanent disability. We can see no reason for reading the word 'incurable' into the policy when the insurance company has not seen fit to put it there.''

The Supreme Court of Alabama, in 1936, in *Volunteer State Life Insurance Co.* v. *Weaver*, 232 Ala., 224, 167 So., 268, referred to the *Cody case* but declined to follow it.

The Supreme Court of Colorado, in 1938, in *Pacific Mutual Life Insurance Co.* v. *Matz*, 102 Colo., 587, 81 P. (2d), 775, 776, said: ''The company emphasizes *Cody* v. *John Hancock Mutual Life Insurance Co.*, 111 W. Va., 518, 163 S. E., 4, 86 A. L. R., 354, but we are not in accord with the announcement there, mainly because the court supports its opinion by tort and compensation cases which we regard as fundamentally distinguishable.''

The Supreme Court of South Carolina, in 1935, in *Ford* v. *New York Life Insurance Co.*, 176 S. C., 186, 180 S. E., 37, cited the *Tittsworth case* and followed the rule announced therein.

The Supreme Court of Kansas, in 1931, in *Maresh* v. *Peoria Life Insurance Co.*, 133 Kan., 191, 299 P., 934, 937, in holding that the insured did not have to submit to surgical treatment, said: ''The contract does not so provide. No doubt it is the moral duty of every person to make the most of himself under even the most adverse circumstances; but the issue in this case was

whether plaintiff's disability was permanent. . . . The court has taken the words of the policy as it finds them, and as persons would usually and ordinarily understand them when used to express the purpose for which they were employed. So considered, the evidence authorized the jury to say that, while this man can do a number of things, chiefly petty, he cannot work or conduct business for compensation or profit, and never will be able to do so.''

Section 6086 of the Code provides as follows: ''Every policy of insurance, issued to or for the benefit of any citizen or resident of this state on or after the first day of July, 1907, by any insurance company or association doing business in this state, except fraternal beneficiary associations and mutual insurance companies or associations operating on the assessment plan, or policies of industrial insurance, shall contain the entire contract of insurance between the parties to said contract, and every such contract so issued shall be held as made in this state and construed solely according to the laws of this state.''

The contract here involved contains no provision to the effect that if insured actually becomes totally and permanently disabled he shall not be considered and dealt with as such if, by a surgical operation, he can have his disability removed, and we do not feel warranted in writing such a provision into his contract. To do so, as stated by the Kentucky Court of Appeals, would be to read into the policy the word ''incurable.''

█ The question of whether the policy had lapsed or was terminated by non-payment of premiums depends upon the facts and upon provisions of the policy. The plaintiff was insured under a group policy that had been continuously in force from December 18, 1933, when he

became permanently and totally disabled on February 7, 1937. The employer paid the premium for employees and charged against their wages half of the monthly payment. At plaintiff's age of thirty-eight years, the monthly charge for carrying his insurance was $1.16. The group policy provided that the individual insurance of an employee should automatically cease when his employment terminated. The plaintiff's employment was not terminated by either the act of the employer or the employee, but as a result of the plaintiff's total permanent disability on February 7, 1937.

Under the heading "Permanent Total Disability Benefit" the policy provides: "Three months after receipt at the Home Office of the Company of satisfactory evidence that any insured employee has, while under the age of 60, become totally disabled by bodily injuries or disease from engaging in any occupation for compensation or profit, and will be so disabled for life, and provided such disability shall have then continued for a period of at least six months, and that such employee has been continuously insured hereunder for at least one year immediately preceding commencement of disability, and that written notice of such disability was received by the Company not more than one year after premium payment on account of the Employee has been discontinued, the company will. . . ." etc.

That provision of the policy distinguishes this case from *Missouri State Life Insurance Co.* v. *Hardin,* 168 Tenn., 340, 341, 78 S. W. (2d), 832, and *Missouri State Life Insurance Co.* v. *Nidiffer,* 168 Tenn., 584 79 S. W. (2d), 1024. In those cases, the policy provided for payment of benefits after disability of six months, but that the policy would terminate at the expiration of the period upon which the premium was last deducted from the

employee's pay. This policy was not kept alive during the period of six months' disability by payment of premiums. No provision of the policy in those cases indicated that disability fixed liability without payment of premiums after the disability began to run. Under the contract in this case, the company obligated itself to pay for total permanent disability, shown to have existed for six months, upon written notice given within a year after premium payment was discontinued.

The judgment of the Court of Appeals is reversed, and that of the Circuit Court affirmed.